SMITH *v.* HOOEY, JUDGE.

No. 198. Argued December 11, 1968.—Decided January 20, 1969.

*Charles Alan Wright,* by appointment of the Court, *post,* p. 813, argued the cause and filed a brief for petitioner.

*Joe S. Moss* argued the cause for respondent. With him on the brief were *Crawford C. Martin,* Attorney General of Texas, *Nola White,* First Assistant Attorney General, *A. J. Carubbi, Jr.,* Executive Assistant Attorney General, *Robert C. Flowers* and *Gilbert J. Pena,* Assistant Attorneys General, and *Carol S. Vance.*

MR. JUSTICE STEWART delivered the opinion of the Court.

In *Klopfer* v. *North Carolina,* 386 U. S. 213, this Court held that, by virtue of the Fourteenth Amendment, the

Sixth Amendment right to a speedy trial[1] is enforceable against the States as "one of the most basic rights preserved by our Constitution." *Id.*, at 226. The case before us involves the nature and extent of the obligation imposed upon a State by that constitutional guarantee, when the person under the state criminal charge is serving a prison sentence imposed by another jurisdiction.

In 1960 the petitioner was indicted in Harris County, Texas, upon a charge of theft. He was then, and still is, a prisoner in the federal penitentiary at Leavenworth, Kansas.[2] Shortly after the state charge was filed against him, the petitioner mailed a letter to the Texas trial court requesting a speedy trial. In reply, he was notified that "he would be afforded a trial within two weeks of any date [he] might specify at which he could be present."[3] Thereafter, for the next six years, the petitioner, "by various letters, and more formal so-called 'motions,'" continued periodically to ask that he be brought to trial. Beyond the response already alluded to, the State took no steps to obtain the petitioner's appearance in the Harris County trial court. Finally, in 1967, the petitioner filed in that court a verified motion to dismiss the charge against him for want of prosecution. No action was taken on the motion.

The petitioner then brought a mandamus proceeding in the Supreme Court of Texas, asking for an order to show cause why the pending charge should not be dismissed. Mandamus was refused in an informal and unreported order of the Texas Supreme Court. The petitioner then sought certiorari in this Court. After invit-

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U. S. Const., Amdt. VI.

[2] On May 5, 1960, the sheriff of Harris County notified the warden at Leavenworth that a warrant for the petitioner's arrest was outstanding, and asked for notice of "the minimum release date." That date is apparently January 6, 1970.

[3] Most of the facts have been stipulated.

ing and receiving a memorandum from the Solicitor General of the United States, 390 U. S. 937, we granted certiorari to consider the constitutional questions this case presents. 392 U. S. 925.

In refusing to issue a writ of mandamus, the Supreme Court of Texas relied upon and reaffirmed its decision of a year earlier in *Cooper* v. *State,* 400 S. W. 2d 890.[4] In that case, as in the present one, a state criminal charge was pending against a man who was an inmate of a federal prison. He filed a petition for a writ of habeas corpus *ad prosequendum* in the Texas trial court, praying that he be brought before the court for trial, or that the charge against him be dismissed. Upon denial of that motion, he applied to the Supreme Court of Texas for a writ of mandamus. In denying the application, the court acknowledged that an inmate of a *Texas* prison would have been clearly entitled to the relief sought as a matter of constitutional right,[5] but held that "a differ-

---

[4] See also *Lawrence* v. *State,* 412 S. W. 2d 40.

[5] For this proposition the court cited its 40-year-old decision in *Moreau* v. *Bond,* 114 Tex. 468, 271 S. W. 379. The court in that case said:

"Those rights, fundamental in their nature, which have been guaranteed by the Bill of Rights cannot be the subject of judicial discretion. Judicial discretion is a legal discretion and not a personal discretion; a legal discretion to be exercised in conformity to the Constitution and the laws of the land. It is only in the absence of positive law or fixed rule that the judge may decide by his view of expediency or of the demands of justice or equity. The Bill of Rights, Section 10 of Article I of the Constitution, provides: 'In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury' . . . .

"None of the reasons suggested, either in the order overruling relator's motion for trial or in the answer to the petition for mandamus here, are good or have any foundation in law or justice. Certainly, under our Constitution and our laws, the relator is entitled to a trial on the charge against him." 114 Tex., at 470, 271 S. W., at 379–380.

The basis of the decision thus appears to have been the speedy-trial guarantee contained in the state constitution.

ent rule is applicable when two separate sovereignties are involved." 400 S. W. 2d, at 891. The court viewed the difference as "one of power and authority." *Id.,* at 892. While acknowledging that if the state authorities were "ordered to proceed with the prosecution . . . and comply with certain conditions specified by the federal prison authorities, the relator would be produced for trial in the state court," *id.,* at 891, it nonetheless denied relief, because it thought "[t]he true test should be the power and authority of the state unaided by any waiver, permission or act of grace of any other authority." *Id.,* at 892. Four Justices dissented, expressing their belief that "where the state has the power to afford the accused a speedy trial it is under a duty to do so." *Id.,* at 893.

There can be no doubt that if the petitioner in the present case had been at large for a six-year period following his indictment, and had repeatedly demanded that he be brought to trial, the State would have been under a constitutional duty to try him. *Klopfer* v. *North Carolina, supra,* at 219. And Texas concedes that if during that period he had been confined in a Texas prison for some other state offense, its obligation would have been no less. But the Texas Supreme Court has held that because petitioner is, in fact, confined in a federal prison, the State is totally absolved from any duty at all under the constitutional guarantee. We cannot agree.

The historic origins of the Sixth Amendment right to a speedy trial were traced in some detail by THE CHIEF JUSTICE in his opinion for the Court in *Klopfer, supra,* at 223–226, and we need not review that history again here. Suffice it to remember that this constitutional guarantee has universally [6] been thought essential to pro-

---

[6] "Today, each of the 50 States guarantees the right to a speedy trial to its citizens." *Klopfer* v. *North Carolina, supra,* at 226; see Note, The Right to a Speedy Criminal Trial, 57 Col. L. Rev. 846, 847 (1957); cf. Note, The Lagging Right to a Speedy Trial, 51 Va. L. Rev. 1587 (1965).

tect at least three basic demands of criminal justice in the Anglo-American legal system: "[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States* v. *Ewell,* 383 U. S. 116, 120. These demands are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction.

At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed.[7] Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.[8]

---

[7] See Schindler, Interjurisdictional Conflict and the Right to a Speedy Trial, 35 U. Cin. L. Rev. 179, 182–183 (1966).

[8] See, *e. g., Evans* v. *Mitchell,* 200 Kan. 290, 436 P. 2d 408 (holding that Kansas had no duty to bring to trial a person serving a 15-year sentence in a Washington prison, although the pendency of the Kansas charge prevented any possibility of clemency or conditional pardon in Washington and made it impossible for the prisoner to take part in certain rehabilitation programs or to become a trusty in the Washington prison). The existence of an outstanding criminal charge no longer automatically makes a prisoner ineligible for parole in the federal prison system. 28 CFR § 2.9 (1968); see Rules of the United States Board of Parole 17–18 (1965). But as

And while it might be argued that a person already in prison would be less likely than others to be affected by "anxiety and concern accompanying public accusation," there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. *Klopfer* v. *North Carolina, supra,* at 221–222. In the opinion of the former Director of the Federal Bureau of Prisons,

> "[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement." [9]

Finally, it is self-evident that "the possibilities that long delay will impair the ability of an accused to defend himself" are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to

---

late as 1959 the Director of the Federal Bureau of Prisons wrote: "Today the prisoners with detainers are evaluated individually but there remains a tendency to consider them escape risks and to assign them accordingly. In many instances this evaluation and decision may be correct, for the detainer can aggravate the escape potentiality of a prisoner." Bennett, "The Last Full Ounce," 23 Fed. Prob. No. 2, p. 20, at 21 (1959). See also Note, Detainers and the Correctional Process, 1966 Wash. U. L. Q. 417, 418–423.

[9] Bennett, *supra,* n. 8, at 21; see Walther, Detainer Warrants and the Speedy Trial Provision, 46 Marq. L. Rev. 423, 427–428 (1963).

keep track of their whereabouts, is obviously impaired. And, while "evidence and witnesses disappear, memories fade, and events lose their perspective," [10] a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.

Despite all these considerations, the Texas Supreme Court has said that the State is under no duty even to attempt to bring a man in the petitioner's position to trial, because "[t]he question is one of power and authority and is in no way dependent upon how or in what manner the federal sovereignty may proceed in a discretionary way under the doctrine of comity." [11] Yet Texas concedes that if it did make an effort to secure a federal prisoner's appearance, he would, in fact, "be pro-

---

[10] Note, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 Yale L. J. 767, 769 (1968).

[11] *Cooper* v. *State*, 400 S. W. 2d 890, 892. The only other basis suggested by the Texas Supreme Court for its denial of relief in *Cooper* was the expense that would be involved in bringing a federal prisoner to trial, the court noting that a directive of the Federal Bureau of Prisons provided that "satisfactory arrangements for payment of expenses [must be] made before the prisoner is actually removed to the place of trial." *Id.,* at 891. But the expense involved in effectuating an occasional writ of habeas corpus *ad prosequendum* would hardly be comparable to what is required to implement other constitutional rights, *e. g.,* the appointment of counsel for every indigent defendant. *Gideon* v. *Wainwright,* 372 U. S. 335. And custodial as well as transportation expenses would also be incurred if the State brought the petitioner to trial after his federal sentence had run. If the petitioner is, as the State maintains, not an indigent, there is nothing to prevent a fair assessment of necessary expenses against him. Finally, the short and perhaps the best answer to any objection based upon expense was given by the Supreme Court of Wisconsin in a case much like the present one: "We will not put a price tag upon constitutional rights." *State ex rel. Fredenberg* v. *Byrne,* 20 Wis. 2d 504, 512, 123 N. W. 2d 305, 310.

duced for trial in the state court." [12]   This is fully confirmed by the memorandum that the Solicitor General has filed in the present case:

> "[T]he Bureau of Prisons would doubtless have made the prisoner available if a writ of habeas corpus *ad prosequendum* had been issued by the state court. It does not appear, however, that the State at any point sought to initiate that procedure in this case." [13]

In view of these realities, we think the Texas court was mistaken in allowing doctrinaire concepts of "power" and "authority" to submerge the practical demands of the constitutional right to a speedy trial.   Indeed, the rationale upon which the Texas Supreme Court based its denial of relief in this case was wholly undercut last Term in *Barber* v. *Page,* 390 U. S. 719.   In that case we dealt

---

[12] *Cooper* v. *State, supra,* at 891.

[13] That memorandum also states:

"It is the policy of the United States Bureau of Prisons to encourage the expeditious disposition of prosecutions in state courts against federal prisoners.   The normal procedure under which production is effected is pursuant to a writ *ad prosequendum* from the state court.   Almost invariably, the United States has complied with such writs and extended its cooperation to the state authorities. The Bureau of Prisons informs us that removals are normally made by United States marshals, with the expenses borne by the state authorities.   In some instances, to mitigate the cost to the State, the Bureau of Prisons has removed an inmate to a federal facility close to the site of prosecution.   In a relatively small number of instances, prisoners have been produced pursuant to 18 U. S. C. § 4085, which provides in part:

" 'Whenever any federal prisoner has been indicted, informed against, or convicted of a felony in a court of record of any State or the District of Columbia, the Attorney General shall, if he finds it in the public interest to do so, upon the request of the Governor or the executive authority thereof, and upon the presentation of a certified copy of such indictment, information or judgment of conviction, cause such a person, prior to his release, to be transferred to a penal or correctional institution within such State or District.' "

with another Sixth Amendment guarantee—the right of confrontation. In holding that Oklahoma could not excuse its failure to produce a prosecution witness simply because he was in a federal prison outside the State, we said:

> "We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed. 1940).

> "Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. . . .

> ". . . The Court of Appeals majority appears to have reasoned that because the State would have had to request an exercise of discretion on the part of federal authorities, it was under no obligation to make any such request. Yet as Judge Aldrich, sitting by designation, pointed out in dissent below, 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' 381 F. 2d, at 481. In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence

at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." 390 U. S., at 723–725 (footnotes omitted).

By a parity of reasoning we hold today that the Sixth Amendment right to a speedy trial may not be dispensed with so lightly either. Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial.

The order of the Supreme Court of Texas is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Black concurs in the opinion and judgment of the Court, but he would make it absolutely clear to the Supreme Court of Texas that so far as the federal constitutional question is concerned its judgment is set aside only for the purpose of giving the petitioner a trial, and that if a trial is given the case should not be dismissed.

Separate opinion of Mr. Justice Harlan.

I agree that a State may not ignore a criminal accused's request to be brought to trial, merely because he is incarcerated in another jurisdiction, but that it must make a reasonable effort to secure his presence for trial. This much is required by the Due Process Clause of the Fourteenth Amendment, and I would rest decision of this case on that ground, and not on "incorporation" of the Sixth Amendment's speedy-trial provision into the Four-

teenth. See my opinion concurring in the result in *Klopfer* v. *North Carolina,* 386 U. S. 213, 226 (1967).

I believe, however, that the State is entitled to more explicitness from us as to what is to be expected of it on remand than what is conveyed merely by the requirement that further proceedings not be "inconsistent with this opinion." Must the charges against petitioner be dismissed? Or may Texas now secure his presence and proceed to try him? If petitioner contends that he has been prejudiced by the nine-year delay, how is this claim to be adjudicated?

This case is one of first impression for us, and decides a question on which the state and lower federal courts have been divided. Under these particular circumstances, I do not believe that Texas should automatically forfeit the right to try petitioner. If the State still desires to bring him to trial, it should do so forthwith. At trial, if petitioner makes a *prima facie* showing that he has in fact been prejudiced by the State's delay, I would then shift to the State the burden of proving the contrary.

MR. JUSTICE WHITE, concurring.

I join the opinion of the Court, understanding its remand of the cause "for further proceedings not inconsistent with this opinion" to leave open the ultimate question whether Texas must dismiss the criminal proceedings against the petitioner. The Texas court's erroneous reliance on the fact of incarceration elsewhere prevented it from reaching the other facets of this question, which may now be adjudicated in the manner permitted by Texas procedure.