Commonwealth *v.* Sutton, Appellant.

Argued December 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Melvin Dildine,* Assistant Defender, with him *Elizabeth Langford Green,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Edward G. Rendell,* Assistant District Attorney, with him *James D. Crawford,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 20, 1969:
The appeal is quashed.

———

DISSENTING OPINION BY HOFFMAN, J.:
On February 10, 1947, appellant escaped from Holmesburg Prison, Philadelphia County, where he was

serving a sentence for robbery. Shortly thereafter, he was indicted, in absentia, for prison breach pursuant to the Act of June 24, 1939, P. L. 872, §309, as amended, 18 P.S. 4309, and a warrant was issued for his arrest. This warrant was never served, however, as appellant escaped detection until 1952. At that time, he was convicted and sentenced for robbery in New York where he had been captured. He has been incarcerated in New York until the present time. Subsequent to his capture, the Commonwealth of Pennsylvania in 1952, filed a detainer in New York based on the indictment for prison breach. Appellant is now eligible for parole in New York, but the detainer lodged against him prevents his release. Accordingly, appellant petitioned the Court of Quarter Sessions of Philadelphia County to quash the outstanding indictment which supports the New York detainer. The lower court refused and this appeal followed.

Appellant maintains that the indictment should be quashed because the Commonwealth had denied him his right to a speedy trial. He bases this claim on rights guaranteed by the Sixth Amendment and enunciated in the Interstate Agreement on Detainers of which both Pennsylvania and New York have been signators since 1959. Specifically, he argues that the Commonwealth had the opportunity from 1952 to 1959 to secure his presence from New York under the doctrine of comity between the States and from 1959 until the present time under the Interstate Agreement on Detainers. The Commonwealth's failure to do so over a period of seventeen years was without reasonable justification and constitutes a denial of his right to a speedy trial.

The majority has refused to consider this claim. Instead, it has quashed this appeal presumably because it is considered interlocutory. This conclusion, how-

ever, conflicts with the Commonwealth's position. In its brief, the Commonwealth apparently concedes that this appeal is properly before us. It does not argue this procedural aspect and instead addresses itself exclusively to the merits of appellant's contention.

I believe that this appeal is not interlocutory, and to quash it at this time would work substantial prejudice to appellant.

It is true as a general rule "that no appeal lies from the refusal of a motion to quash an indictment, unless it is defective on its face, but . . . there may be exceptions, and such exceptions would be recognized 'in exceptional cases and to safeguard basic human rights.'" *Commonwealth v. Fudeman,* 396 Pa. 236, 152 A. 2d 428 (1959).

"Such exceptional circumstances arise (1) where an appeal is necessary to prevent a great injustice to the defendant, or (2) where an issue of basic human rights is involved, or (3) where an issue of great public importance is involved." (citations omitted) *Commonwealth v. Swanson,* 424 Pa. 192, 225 A. 2d 231 (1967). In such instances, procedural delay in a criminal case, which is justified only as serving the orderly administration of the judiciary, will not be tolerated.

In the instant case, appellant has been incarcerated for the past seventeen years. Throughout that period, the Commonwealth has consciously chosen not to prosecute him, even though it has had the power to do so. This delay, appellant claims, has denied him his basic right to a speedy trial which now has the collateral effect of preventing his release on parole in New York. To quash the appeal at this time will result in an interminable, vexatious and unfair delay. Assuming, arguendo, that appellant has been denied his right to a speedy trial, this additional delay, when added to the seventeen years which have elapsed, would compound

the damage already done to appellant to an intolerable and inhumane degree. Since appellant's claim is not frivolous on its face, he is entitled to have as rapid a determination of this question as is now possible.

Moreover, appellant's claim raises a dramatic constitutional issue as well as a question of statutory interpretation, both of which are matters of first impression in our state courts. It is apparent, therefore, that a speedy determination of the questions raised is in the public interest, and that we should consider the merits of appellant's claim. *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A. 2d 780 (1954).

The Commonwealth has to date offered no justification for its failure to request appellant's extradition from New York for purposes of trying him on the outstanding indictment. Instead, it contends that it was under no duty, constitutional or otherwise, to do so.

This position, however, is repugnant to the policy enunciated in the Interstate Agreement on Detainers of which both Pennsylvania and New York are Signators. Act of September 8, 1959, P. L. 829, No. 324, §1, 19 P.S. 1431. The Act provides that any signator may extradite a prisoner in another signator state for the purposes of trying the prisoner on outstanding indictments against him. In clear language, Article I of the Act provides that "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states [Pennsylvania] and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

Towards that end, Article IV of the Act provides that "the appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available [by that party state]."

Once the prisoner is extradited, Article IV(c) states that he must be tried within 120 days of his arrival in the receiving state. If the state fails in this duty, then Article V(c) provides that the "appropriate court of the [state] where the indictment, information or complaint has been pending shall enter an order, dismissing the same *with prejudice*, and any detainer based thereon shall cease to be of any force or effect." (Emphasis added)

It is apparent, therefore, that the Detainer Act contemplates that a state will seek extradition of prisoners in another state expeditiously in order to bring them to a speedy trial on outstanding indictments against them. If a state extradites a prisoner and then fails to prosecute him within 120 days, the detainer and outstanding indictment against him are quashed *with prejudice*. Similarly, if the state refuses to seek extradition within a reasonable time, it should also follow that the outstanding indictment and detainer against him should be quashed, with prejudice. This result is mandated by the legislative purpose expressed in Article I requiring prosecutors to proceed on outstanding indictments as quickly as possible in order to promote "prisoner treatment and rehabilitation."

Moreover, the Commonwealth's position is antithetical to that recently enunciated in *Smith v. Hooey*, 393 U.S. 374, 4 CrL 3077 (1969). In *Smith*, the United States Supreme Court held that the right of a speedy

trial extends to a prisoner in one jurisdiction who has been indicted in a second jurisdiction if the second jurisdiction has the power, by agreement or treaty with the first jurisdiction to secure the prisoner's presence for the purpose of trial. Quoting from the dissent in the lower court, the Court stated: "[w]here the state has the power to afford the accused a speedy trial it is under a duty to do so." Thus, the court held that its reasoning in *Barber v. Page,* 390 U.S. 719 (1968), wherein it was held that an accused is denied his right to confrontation of witnesses at trial if the state refuses to secure the presence of a prosecution witness who is incarcerated in a different jurisdiction is fully applicable to the constitutional right of a speedy trial. In language which the court adopted by a "parity of reasoning" to apply to the constitutional right to a speedy trial, the court reiterated its statement in *Barber* that "a witness may be considered unavailable for confrontation purposes only if the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The state made no such effort here, and, so far as this record reveals, the sole reason why [the missing witness] was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." Accordingly, the Supreme Court in *Smith* concluded that "upon the petitioner's demand [the State] had a constitutional duty to make a diligent, good-faith effort to bring him before the court for trial."

In my view, *Smith* controls the instant case. The only difference in the facts presented is that appellant here has never requested that his case be brought to trial in Pennsylvania, while the petitioner in *Smith* made repeated requests that he be brought to trial. Appellant's omission, in my view was not a knowing

waiver of his right to a speedy trial, which the state is under an affirmative duty to provide.

At the hearing below, it was orally stipulated by the attorney for appellant and the District Attorney that "there is nothing in the record whatsoever . . . to indicate that [appellant], the defendant in the March Sessions, 1947 Bill, was ever advised of his right to a speedy trial or was ever advised of anything other than the fact that the indictment was lodged as a detainer against him after completion of his term in New York."

Since appellant was at all times indigent and unable to afford counsel during the course of his New York imprisonment, it is apparent that he did not know of his right to demand a speedy trial or that he would face a Pennsylvania detainer when he would be released from his New York imprisonment. His failure to request of Pennsylvania that he be brought promptly to trial, therefore, was not a knowing waiver of a constitutional right.

In *Needel v. Scafati*, 289 F. Supp. 1006, 4 CrL 3001 (1968), the United States District Court for Massachusetts dealt with circumstances comparable to that present in the instant case. In *Needel* an indigent "with a bad prior criminal record" was incarcerated for four and one-half years during which time he was never arraigned nor informed of his right to a speedy trial on an outstanding indictment against him. The prosecutor, as in the case here, "offers no reason, explanation or excuse for the protracted delay in arraigning the petitioner" and the court found that there was no legitimate reason for the delay.

The District Court furthermore found, as in the instant case, that the detainer on file supported by the outstanding indictment had an "indirect adverse effect" on defendant's eligibility for parole. "The felony war-

rant lodged at the prison against the petitioner nega-
tived the probability that he would 'remain at liberty'
if released on parole" which is a condition in Massa-
chusetts for parole being granted.

Accordingly, the District Court held that "the un-
reasonably long, unjustified, oppressive and prejudi-
cial delay of four and a half years in the prosecution
of the indictments constituted a denial of petitioner's
constitutional right to a speedy trial unless he waived
the right. . . . The right to a speedy trial is a personal
right and may be waived by the accused. The question
of waiver of a fundamental, federally guaranteed, con-
stitutional right is a federal question controlled by fed-
eral law. There is a presumption against the waiver
of constitutional rights. For a waiver to be effective
it must be clearly established that there was an inten-
tional relinquishment or abandonment of a known
right. Brookhart v. Janis, 384 U.S. 1, 4 (1966).

"Every reasonable presumption is indulged *against*
the waiver of fundamental rights. Glasser v. United
States, 1942, 315 U.S. 60, 70. Acquiescence in the
loss of fundamental rights may not be presumed. John-
son v. Zerbst, 1937, 304 U.S. 458, 464.

"Until November 1963 (46 months after indictment)
petitioner did not know that he had the right to a
speedy trial. Since he did not know of the existence
of the right he could not intelligently or understand-
ingly or intentionally relinquish or abandon it. Peti-
tioner was an indigent prisoner, ignorant of his rights,
and deprived of the assistance of counsel. His failure
to request or demand trial after he was made aware of
his right to a speedy trial, is not a sufficient basis for
an inference that he had waived it."

The Court then concluded that "the delay in the
case before me was of extraordinary duration; it was
utterly without reason or legitimate purpose; it was

prejudicial and oppressive to the petitioner; it was in no way caused by the petitioner but solely by the clear negligence of the prosecutor. During the long delay between his indictment and his arraignment, the petitioner was helpless to take any effective action in his own behalf by reason of his imprisonment, his indigence, ignorance of his rights, and lack of counsel." The court then ordered petitioner released and quashed the conviction.

The instant case presents an even more dramatic denial of an accused's right to a speedy trial than does *Needel*. Here, appellant was incarcerated for seventeen years during which time the Commonwealth, without justification, refused to bring him to trial. Now he is prevented from securing a parole in New York because of the outstanding indictment against him issued by the Commonwealth over two decades ago.

Thus, the denial of his right to a speedy trial has already caused him substantial prejudice. Moreover, a delay of seventeen years on the Commonwealth's part in bringing appellant to trial, constitutes on its face per se prejudice to appellant's ability to raise any defenses which may have been available at one time.

Under all of these circumstances, I do not believe that the Commonwealth should have the power to bring appellant to trial. I would quash the indictment against him.

MONTGOMERY and SPAULDING, JJ., join in this dissenting opinion.