**UNITED STATES of America ex rel. Walter KRENKOWITZ**

v.

**A. T. RUNDLE.**

**Misc. No. 3964.**

United States District Court, E. D. Pennsylvania.

Sept. 21, 1970.

William Brady, Philadelphia, Pa., for relator.

Allan Goodman, Asst. Dist. Atty., Northampton County, Easton, Pa., for defendant.

## OPINION AND ORDER

MASTERSON, District Judge.

In this habeas corpus petition relator challenges the validity of his 1963 conviction for burglary on five grounds, namely:

(1) suppression of evidence by the state;

(2) the use of perjured testimony both to extradite and convict relator;

(3) newly-discovered evidence which was unavailable at the time of trial and which would have affected the outcome of his trial;

(4) the failure of the Commonwealth to comply with the Interstate Agreement on Detainers, 19 Purdon's Pa.Statutes § 1431; and

(5) a violation of relator's right to a a speedy trial.

Relator was convicted in November 1963 and received a 3 to 6 year sentence. On May 17, 1967, he was paroled. On September 26, 1967, relator pled guilty to another burglary charge and was sentenced to a 4 to 8 year term. By the terms of the sentence, relator is required to serve this latter sentence before he serves any time as a parole violator of his 1963 sentence. See Docket Entries for September 26, 1967, Commonwealth v. Krenkowitz, No. 127, June Term, 1967. Hence, relator is presently serving the 4 to 8 year sentence he received in 1967 but may still be subject to incarceration after that sentence expires as a parole violator of his 1963 sentence. The Parole Board has declared relator a parole violator and has filed a detainer against him.[1] Under Pennsylvania law, the Board may recommit relator to serve the balance of his unexpired 3 to 6 year sentence without credit for time on parole.[2]

As we have noted, in this habeas corpus petition relator challenges his *first* conviction in 1963, not his 1967 conviction for which he is presently serving time. Relator has challenged his 1963 conviction unsuccessfully in the state courts in the following proceedings: (1) petition for a writ of Error Coram

---

1. See letter of District Attorney of June 25, 1970.

2. 61 Purdon's Statutes § 331.21a. As to the constitutionality of this procedure see United States of America ex rel. William Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (1970).

Nobis; (2) petition for New Trial on the basis of newly discovered evidence; and (3) Post-Conviction Hearing Act proceedings.

Initially, two related questions arise (1) as to our jurisdiction and (2) as to the nature of the relief we can grant in this case. These questions arise because relator is not presently in custody for the sentence he is challenging nor was he at the time he filed this petition.

■ First, it is clear that we have jurisdiction in this case. 28 U.S.C. § 2241(c) (3) provides in part: "The writ of habeas corpus shall not extend to a prisoner unless * * * (3) he is in custody in violation of the Constitution or laws of the United States * * * ". Under the decisions of the Supreme Court, relator has met this "in-custody" jurisdictional requirement even though the relief we ultimately grant does not affect his present incarceration, that is, bring about relator's immediate release. It is clear that relator may still be subject to incarceration for the challenged conviction because the Parole Board may recommit him as a convicted parole violator. Viewed in this light, the instant case is analogous to challenging a future consecutive sentence which the Supreme Court in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) held met the "in-custody" requirement of the habeas corpus statute. In addition, in Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court held that Federal Courts have jurisdiction of habeas corpus petitions even though the petitioner's sentence totally expired and the Court could not grant a discharge from actual physical custody. The Court noted that the relief available in habeas corpus cases is broad—"as law and justice require", 28 U.S.C. § 2243, and is not limited to a discharge from custody. Accordingly, we have jurisdiction to entertain this petition. See also United States of America ex rel. DiRienzo v. New Jersey, 423 F.2d 224 (3d Cir. 1970).

■ Secondly, assuming we hold relator's first conviction invalid, the question arises whether the sole relief available to relator is to suffer no ill consequences *in the future* as a result of that conviction or whether we can go further and credit to the sentence relator is presently serving the time served under his invalid conviction. We have concluded that we cannot credit relator with any time served under his first conviction. It is well established that the Constitution does not require such relief, see, *e. g.* United States ex rel. Watson v. Commonwealth and Common Pleas Court of Pa., 260 F.Supp. 474 (E.D.Pa.1966) and cases cited therein, and it does not appear that Pennsylvania requires its courts to give such credit. Relator's situation should be distinguished from the situation where one is paroled from one sentence, is later convicted and sentenced for a second offense and given the status of a convicted parole violator because of this subsequent conviction and then actually serves time as a parole violator *before* commencing his second sentence. In those cases the Pennsylvania courts do credit time spent as a parole violator of the invalid sentence to the subsequent valid conviction. Commonwealth ex rel. Ulmer v. Rundle, 421 Pa. 40, 218 A.2d 233 (1966); United States ex rel. Watson v. Commonwealth and Common Pleas Court of Pa., *supra*. Here, relator has not yet served any time as a convicted parole violator. Hence the only relief we can accord relator if we hold his 1963 conviction invalid is to see that he suffers no adverse consequences from this conviction such as being required to serve the balance of his unexpired sentence as a convicted parole violator. As we see it, however, relator would be free to present to the state courts the question whether, as a matter of state law, he should be credited with time served under an invalid sentence. But the door to the Federal Courts on this question is closed.

We now turn to the merits of petitioner's claim. The record in this case reveals the following facts. On December 1, 1957, relator was arrested in connection with an offense he allegedly com-

mitted in New Jersey. He was convicted of this offense and incarcerated in the State Prison at Trenton, New Jersey, for a term of 5 to 7 years. While so incarcerated, relator was notified on November 23, 1959, that a detainer was lodged against him by Northampton County, Pennsylvania, on a warrant issued for a burglary offense relator allegedly committed. (Petitioner's Exhibit No. 1).[3] In January of 1961, through a Mr. Ralph Peach, relator twice contacted the Northampton County Chief of Police requesting a speedy disposition of this charge. (See P–2; Notes of Testimony at Federal Habeas Corpus Hearing on May 20). On June 6, 1961, relator made this same request to the Chief of Police by letter (P–2). Relator received no response to these requests. On October 24, 1961, relator wrote to the Honorable William J. Barthold, President Judge of the Northampton County Court of Common Pleas, asking that speedy disposition be made of the outstanding charges against him (P–4). Judge Barthold referred this letter to the District Attorney of Northampton County (P–5). The District Attorney apparently answered this letter (see P–6) but the document was not produced at our hearing. On November 27, 1961, Krenkowitz wrote to the District Attorney (P–6) stating that he was innocent of the crime charged, that he be assigned counsel so that he could prove his whereabouts on the day of the crime and that he be given a lie detector test. Krenkowitz also stated that if the District Attorney complied with his request relator would be ready to go to trial during the second week of February, 1962. On December 4, 1961, the District Attorney responded, informing Krenkowitz that his request for counsel was referred to the Legal Aid Committee and that he, the District Attorney, thought that he had a prima facie case against Krenkowitz (P–7). On January 23, 1961, relator again wrote to Judge Barthold reviewing relator's futile attempt to obtain a disposition of

the charges outstanding against him and enclosing a "Motion to Nolle Prosequi and/or Dismiss" the indictment (P–8). On March 2, 1962, Judge Barthold responded to relator's letter informing him that the District Attorney would not join in relator's request to nol pros and that the District Attorney planned to bring relator to trial during the week beginning April 9, 1962 (P–9). On the same day the District Attorney wrote to relator advising him of when he would be brought to trial and informing him that counsel would be provided (P–10). On March 9, 1962, relator's appointed counsel Gus Milides, Esq., informed relator that he would interview him when he arrived in Northampton County Court "on or about April 10, 1962" (P–11). Relator was not brought to trial during this week of April 9th.

On April 14, 1962, relator wrote to the District Attorney asking why he was not brought to trial during the week of April 9th, as the District Attorney's and Judge Barthold's letters stated, "in spite of the fact that this matter has now been pending for almost two and one-half years since founding of indictment" (P–12). Apparently relator received no response to this letter. Relator was, however, informed on May 10, 1962, by his own attorney that the District Attorney did not plan to bring relator to trial until he served the term he was presently serving in New Jersey (P–13).

On October 9, 1962, relator filed a Motion to Dismiss the Indictment pursuant to the provisions of the Interstate Compact on Detainers. On October 29, 1962, the District Attorney wrote to relator informing him that arrangements had been made to have relator's case heard during the week of November 12, 1962, but that relator's motion "will now stand in the way of these plans" and that if relator desired to withdraw his motion the Commonwealth would proceed with their plans to try him (P–19).

Ironically, on May 20, 1963, relator received notice, pursuant to the Inter-

3. Hereafter relator's exhibits will be designated "P" followed by the number of the particular exhibit in question.

state Compact, of the existence of the untried indictment against him and of his rights in order to dispose of that indictment within 180 days.

On August 27, 1963 relator was released from incarceration on the sentence he was then serving. At first relator fought extradition but when a witness for relator, whom he alleged would testify on his behalf as an alibi witness did not appear at the extradition hearing, relator waived extradition. He was brought to Pennsylvania on November 8, 1963 and was tried on November 19, 1963, almost 4 years after he was notified of the outstanding indictment. It should be noted that the person relator says can testify on his behalf as an alibi witness moved out of New Jersey in November of 1962 and could not be contacted at the time of trial.

The first three grounds asserted by relator—suppression of evidence by the State, use of perjured testimony and newly-discovered evidence—have been presented to the state courts in post trial proceedings. We have reviewed the records of those proceedings and believe that they were fully and fairly conducted and prefer to leave the decisions adverse to relator intact.

Relator's fourth contention is based on a Pennsylvania statute which sets forth procedures whereby prisoners incarcerated in jurisdictions which are parties to an interstate agreement are able to expeditiously dispose of untried indictments against them in other party-states. Generally, the statute provides that a prisoner in one party-state, upon request to another party-state in which an untried indictment is outstanding against him, must be brought to trial within 180 days after request or the indictment is deemed of no force and effect.

■ Relator's contention that the Commonwealth did not comply with the

interstate agreement has been presented to the state courts and decided against relator on the ground that relator himself failed to strictly comply with some of the procedural requirements of the statute.[4] Although we do not necessarily agree that the Interstate Compact should be so narrowly construed and technically applied, nevertheless we believe that, even if relator did comply with the statute, the failure of the Commonwealth to comply does not allow us to grant a writ of habeas corpus. This conclusion is compelled by the Third Circuit case of United States of America ex rel. Bennett v. Rundle, 419 F.2d 599 (1969). There, the Court was faced with a similar statute, 19 Purdon's Pa. § 881 *et seq.*, which provides that prisoners in the Commonwealth must, on request be brought to trial on all untried indictments in the Commonwealth within 180 days after request. The Court found that even if the Commonwealth failed to comply with this statute, it would not present a claim that relator is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Rather, it presents solely a question of state law. The same may be said of the statute before us.

Relator's fifth contention—the denial of his right to a speedy trial—is meritorious and, for the reasons set out below, relator must be granted a writ of habeas corpus.

■ Although relator has not exhausted his state remedies with respect to this issue, it is well-established that we are not compelled because of this to dismiss this petition. As the Third Circuit Court of Appeals said in United States of America ex rel. Gockley v. Myers, 411 F.2d 216, 219 (1969):

"The requirement that a habeas corpus applicant exhaust his State remedies, now embodied in 28 U.S.C. § 2254,

---

4. The state court based its decision on the "well established principle of law in this Commonwealth that where a remedy or method of procedure is provided by an Act, its provisions must be strictly pur-

sued and exclusively applied." Commonwealth v. Krenkowitz, No. 26, Nov. Term, 1969, Opinion of the Court, p. 2, March 18, 1963.

is a principle of comity and does not rise to jurisdictional proportions. If the case is sufficiently exceptional the doctrine need not be rigidly followed to the point of inflicting manifest injustice."

Since we are of the view that this is a clear case of a violation of relator's constitutional rights, it would work manifest injustice to compel the relator to return to the state courts. Accordingly, we will reach the merits of the speedy trial issue.

The United States Supreme Court made the Sixth Amendment right to a speedy trial applicable to the States through the Fourteenth Amendment in the case of Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Relator's prosecution, however, began in 1959, 8 years before *Klopfer*. Assuming that *Klopfer* is not retroactive, the issue before us is whether relator's trial was unconstitutionally delayed under the test of due process applicable to the States prior to *Klopfer*. See Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, decided May 25, 1970, concurring opinion of Justice Brennan. We find that on the facts of this case relator has been denied due process of law.

If there were ever a case of an individual's attempts to secure a speedy disposition of charges outstanding against those attempts, this is the case. The particular problem in this case—a prisoner in one jurisdiction with charges outstanding in another jurisdiction—is one that has plagued for many years the due administration of criminal justice. In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1968), the Supreme Court "put to rest a frequently criticized but widely held view that a state bringing charges against a prisoner confined by another state or the Federal Government need make no effort to prosecute

him until he is released from custody."[5] In *Smith*, the Court held that upon demand of a prisoner confined in another jurisdiction a state has "a constitutional duty to make a diligent, good-faith effort to bring him" to trial. 393 U.S. at 383, 89 S.Ct. at 579. Unfortunately for relator these salutary rules were not in existence at the time of the inception of his prosecution. There was in effect, however, the Interstate Compact on Detainers. Yet, the beneficial effect of the Compact's provisions was thwarted by the Commonwealth. It is just such an attitude by the state prosecuting authorities which make necessary Supreme Court decisions such as Smith v. Hooey, *supra,* and Dickey v. Florida, *supra.*

As we have noted, relator's case is governed by the principles of due process applicable prior to *Klopfer*. In applying these principles the factors we must consider are as follows: the length of delay, the reasons for the delay, the prejudice to the defendant and waiver by the defendant. Beasley v. Pitchess, 358 F.2d 706 (9th Cir. 1966); United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1962).

[5] All of these factors point to the denial of due process in this case. The delay from the time relator was notified of the charges to his trial was approximately four years and the Commonwealth has offered no good reason for the delay. The prejudice to the defendant here is manifest on the record. It is uncontroverted that defendant's alibi witness had moved to an address unknown to the defendant during the four year delay and could not be contacted at the time of extradition and trial. Finally, there is no evidence of any waiver by the defendant of a speedy disposition of his case. On the contrary, relator continuously pressed for a trial. Under these circumstances we find the language of Mr. Chief Justice Burger in Dickey

5. Kane v. Virginia, 419 F.2d 1369–1371 (4th Cir. 1970).

v. Florida, *supra*, equally applicable here:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law." 398 U.S. at 37, 90 S.Ct. at 1568 (1970).

Since we find that relator has been denied due process of law, we will enter an order granting the writ of habeas corpus. As we have noted above, the effect of granting the writ shall be that relator suffer no ill consequences in the future as a result of his 1963 conviction, such as incarceration as a convicted parole violator. Relator's persent incarceration, however, shall remain unaffected insofar as the Federal Courts are concerned.

We should like to take this opportunity to express our sincere thanks to William J. Brady, Jr., Esq., who, without compensation, so ably represented the relator.