Commonwealth *v.* Bunter, Appellant.

414

Argued November 17, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

reargument refused November 9, 1971.

416

*Neil Jokelson,* with him *Goodis, Greenfield, Narin & Mann,* for appellant.

*J. Bruce McKissock,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

This is an appeal from the order of the Court of Common Pleas of Philadelphia, Criminal Division, dismissing appellant's petition to quash the outstanding murder indictment against him. We vacate the order refusing to quash the instant indictment, and direct the trial court to conduct a hearing on the alleged denial of speedy trial.

The relevant facts may be summarized as follows: On February 13, 1967, the frozen, partially decomposed body of one Bernice Warder was found in the trunk of an abandoned automobile parked on a street in Philadelphia. Initial police inquiry disclosed that the victim was last seen alive on November 26, 1966, in the company of appellant, Lawrence Bunter. Later investigation led authorities to believe that Bunter was the prime suspect in the killing. Subsequently, appellant was found to be incarcerated in a federal prison in Virginia, having been convicted of crimes committed in the District of Columbia. On October 25, 1967, the Philadelphia Police Department lodged an arrest detainer for Bunter charging him with murder. At this

point in time appellant had approximately eighteen months left to serve on his federal sentence.

Over the course of the next year Bunter filed a series of pro se petitions with various titles in both United States District Courts for the Eastern Districts of Pennsylvania and Virginia, as well as in the Court of Quarter Sessions of Philadelphia County. At different times appellant charged that he was being denied a speedy trial, sought a writ of habeas corpus, prayed that the detainer be dismissed and asked for a change of venue. Some of these motions were ignored by the courts.[1] One was returned because additional copies were required,[2] and one was dismissed on the merits with instruction to appellant to seek the relief prayed for in the appropriate state courts of Pennsylvania.[3]

On April 17, 1969, appellant was indicted by the Philadelphia grand jury as a fugitive from justice on the charge of murder. After extradition proceedings, which were contested by appellant, he was returned to this state in November of 1969. Bunter's appointed counsel sought to have the indictment quashed on the grounds that: the bills as presented to the grand jury were defective; there had been neither preliminary ar-

---

[1] Petition of January 16, 1968, to U. S. District Court, Eastern District of Pennsylvania, claiming denial of speedy trial and asking for appointment of counsel; petition of September 30, 1968, to Quarter Sessions Court, Philadelphia, seeking writ of habeas corpus.

[2] Petition of July 31, 1968, to the U. S. District Court for the Eastern District of Pennsylvania asking for a writ of habeas corpus.

[3] Petition of December 23, 1968, to U. S. District Court, Eastern District of Virginia, seeking a writ of habeas corpus, asking that detainer be dismissed for lack of speedy trial. Petition denied and appeal dismissed by Fourth Circuit Court of Appeals, July 23, 1969.

While these petitions lacked legal finesse still they serve to show that appellant, a man unlearned in the law, initially sought a speedy trial and later, dismissal of the charges on the grounds that such was not had.

raignment nor hearing prior to indictment; trial was not held within 120 days as provided by the Interstate Agreement on Detainers, Act of September 8, 1959, P. L. 829, 19 P.S. §1431 et seq., and because Bunter's right to a speedy trial had been abridged by the Commonwealth. On April 15, 1970, the motion to quash was heard and denied by the lower court and bail was set in the amount of $2000.

At the threshold we must meet the question raised by the Commonwealth's motion to quash this appeal on the grounds that it constitutes an attempt to appeal an interlocutory order.

In criminal cases, the general rule is that a defendant may appeal only from a final judgment of sentence, and an appeal from any prior order or judgment will be quashed. *Commonwealth v. Haushalter,* 423 Pa. 351, 223 A. 2d 726 (1966) ; *Commonwealth v. Byrd,* 421 Pa. 513, 219 A. 2d 293 (1966) ; *Commonwealth v. Novak,* 384 Pa. 237, 120 A. 2d 543 (1956). Refusal by a court to grant a motion to quash an indictment is such an interlocutory order. *Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A. 2d 780 (1954). However, as the *Kilgallen* case made clear, the rule prohibiting interlocutory appeal is not one of unyielding inflexibility. When there are special and exceptional circumstances, the defendant may appeal before his trial and conviction from the court's refusal to quash the indictment. One such exceptional circumstance is when an issue of basic human rights is involved.

In the instant case appellant contends that the Commonwealth deprived him of his right to a speedy trial by its unreasonable delay in allowing eighteen months to pass from the time the detainer was lodged to the time when he was finally indicted and sought to be extradited.

In light of our disposition of this case, we need not decide the merits of this allegation. It is enough for

us to hold that the claim of a denial of speedy trial in this case raises an issue of basic human rights and hence is within the rule of the *Kilgallen* case. Such a conclusion is compelled by the recent decision of the United States Supreme Court in *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564 (1970). Chief Justice BURGER, writing for the majority, said that "the right to a prompt inquiry into criminal charges is *fundamental* and the duty of the charging authority is to provide a prompt trial." 398 U.S. at 38 [emphasis supplied]. The opinion also noted that past decisions of the Court [most notably *Smith v. Hooey,* 393 U.S. 374, 89 S. Ct. 575 (1969) and *Klopfer v. North Carolina,* 386 U.S. 213, 87 S. Ct. 988 (1967)] had held that the right to a speedy trial is *"one of the most basic rights preserved by our Constitution."* 398 U.S. at 37 [emphasis supplied].

Moreover, the motion to quash this appeal overlooks an important caveat to the general rule that no appeal will lie from the refusal of a motion to quash an indictment which is "unless it is defective on its face." *Commonwealth v. Fudeman,* 396 Pa. 236, 240, 152 A. 2d 428 (1959); *Commonwealth v. Sutton,* 214 Pa. Superior Ct. 148, 150, 251 A. 2d 660 (1969).

A long line of Pennsylvania cases have held that "when a district attorney submits a bill [of indictment] to the grand jury without a preliminary hearing it is under the supervision of the court, and he must obtain permission of the court to submit the bill." *Commonwealth v. O'Brien,* 181 Pa. Superior Ct. 382, 398, 124 A. 2d 675, appeal dismissed, 389 Pa. 109, 132 A. 2d 265 (1957). The indictment here was initially defective because it is impossible to tell whether the presentment was done with leave of court.[4]

---

[4] The only indication that these bills were subject to prior court review is the typewritten notation which appears on each of these

However, a review of the record compels the conclusion that this defect was cured by the lower court's disposition of the appellant's petition at the April 15, 1970, hearing.[5] It is settled law that "where the indictment is sent up by the district attorney without first obtaining the leave of the court, the discretion of the court may be invoked, and is exercisable upon a motion to quash. If the court refuses to quash, this, ordinarily, is equivalent to giving its sanction. If the court sustains the motion to quash, this is tantamount to refusing its approval of the action of the district attorney. In either case the action of the court is not reviewable on appeal, except for manifest and flagrant abuse of discretion." [Citations omitted.] *Commonwealth v. O'Brien,* supra, at 399. We find no abuse of discretion in this case.

Appellant also contends that the fact that he did not receive a preliminary arraignment or a preliminary hearing should cause us to grant the relief requested. He assigns as support for this position prior case law, the present Pennsylvania Rules of Criminal Procedure and the District of Columbia extradition statute, 18 U.S.C. §3182, which permits extradition by certified affidavit from the demanding state as well as by a copy of an indictment found. This contention is devoid of merit.

As recently as last term in *Commonwealth v. McCloskey,* 443 Pa. 117, 277 A. 2d 764 (1971), we cate-

---

bills "By Leave of Court . . . Fugitive SLOANE, J." The bills, however, were not signed by Judge SLOANE and at the hearing below counsel for the appellant stated to the court that Judge SLOANE's stenographer could not determine whether that jurist had ever held a hearing relating to his alleged approval of this indictment. The record is also silent on this matter.

5 In his memorandum opinion Judge REIMEL emphatically stated, "After hearing counsel at great length it was decided by this court that there was no merit to the petition to quash except that this petitioner was and is entitled to a speedy trial."

gorically rejected the absolutist position that our decision in *Commonwealth v. Rose* and *Commonwealth ex rel. Magaziner v. Sheriff of Philadelphia County,* 437 Pa. 30, 261 A. 2d 586 (1970) should be interpreted as requiring a preliminary hearing in *all* cases.

In the overwhelming majority of cases a criminal action commences with the appropriate prosecuting official's filing of a complaint. Preliminary arraignment and a preliminary hearing follow. This procedure, which can be viewed as the norm, has in the past admitted of certain exceptions, one of which being where the accused was a fugitive from justice.[6]

This traditional exception was reaffirmed in *Commonwealth v. Coyle,* 415 Pa. 379, 396, 203 A. 2d 782 (1964), where it was said: "A fugitive from justice need not be given a preliminary hearing and may properly be proceeded against by use of a district attorney's bill with the approval and under the supervision of the court. See Com. v. O'Brien, 181 Pa. Superior Ct. 382, 124 A. 2d 666 (1956); Com. v. Hoffman, 396 Pa. 491, 152 A. 2d 726 (1959); Com. ex rel. Blackman v. Banmiller, 405 Pa. 560, 176 A. 2d 682 (1962)." and directly alluded to by Mr. Justice ROBERTS in the *McCloskey* case, 443 Pa. at 129 (1971): "The Rules of Criminal Procedure at present . . . do not . . . foreclose any of the other traditional exceptions to proceeding by a preliminary hearing." As courts of this Commonwealth have pointed out, a defendant will be deemed to have impliedly waived the right to a preliminary hearing where he absents himself from the state when a crimi-

---

[6] "It has apparently been the practice since the time of Blackstone, and throughout the history of this Commonwealth, to indict fugitives without a preliminary hearing, or at least without the defendant being present at one." *Commonwealth v. O'Brien,* 181 Pa. Superior Ct. at 395. See also, Comment, *Preliminary Hearings in Pennsylvania: A Closer Look,* 30 University of Pittsburgh Law Review 481, 488 (1969).

nal warrant is issued, *Commonwealth ex rel. Sholter v. Claudy*, 171 Pa. Superior Ct. 442, 90 A. 2d 343 (1952) ; see also, *Commonwealth v. Gallagher*, 200 Pa. Superior Ct. 136, 186 A. 2d 842 (1962).

It is also urged that the Interstate Agreement on Detainers, Act of September 8, 1959, P. L. 829, 19 P.S. §1431, is made operative in this case by the Fourteenth Amendment and that as a result the indictment should be quashed because trial was not held within 120 days as that statute demands.[7]

The salient point of this argument is that despite the fact that the United States [and hence, the District of Columbia] has not signed this interstate compact, the Equal Protection Clause of the Fourteenth Amendment requires that Pennsylvania not discriminate in terms of granting a speedy trial between persons extradited from states that are signatories and prisoners coming from nonsignatory jurisdictions.

This argument must fail for several reasons. It is certainly true that Pennsylvania cannot deny to any person whom it has charged with committing a crime the right to a speedy trial. But with regard to prisoners extradited from certain states with which it has entered into prior agreement, the Commonwealth will accord the right to a speedy trial in a particularized manner, namely by following the provisions of the Detainer

---

[7] 19 P.S. §1431 provides, inter alia, that upon proper demand by an officer of the jurisdiction which has lodged the detainer [here the District Attorney of Philadelphia], federal prisoners from signatory states must be tried within 120 days after they are delivered to our authorities or the indictment will be dismissed and detainer nullified. See Article IV(a) and (c) and Article V(a). Here 149 days had passed from the time the appellant was brought back to Pennsylvania to the point when his case was listed for trial. In the converse situation where it is the prisoner's request which is being acted upon, the Commonwealth has 180 days in which to provide a trial, 19 P.S. §1431, Article III(a). See also *Commonwealth v. Martin*, 445 Pa. 49, 282 A. 2d 241 (1971).

Act. Hence, 19 P.S. §1431 et seq. is ancillary to the right of speedy trial and not a substitution for it. Since the Federal Government is not a party to the interstate compact, the appellant is not entitled to the benefit of the provisions of the Pennsylvania Act.

Moreover, this statute providing for a 120 day period does not create a constitutional rule of thumb which measures the time boundary for a speedy trial. See and cf., *United States ex rel. Krenkowitz v. Rundle*, 317 F. Supp. 1378 (1970) ; *United States ex rel. Bennett v. Rundle*, 419 F. 2d 599 (1969).

The Equal Protection argument would have merit only if it could be shown that the Commonwealth was discriminating purposefully or intentionally between those whom it had charged with crime, granting to some a speedy trial while denying it to others. The Sixth Amendment is a guarantee to all who stand accused of crime. However, the Commonwealth is free to adopt various methods of implementing this right including a comity arrangement with sister states as a method of trying fugitives. And hence while it cannot be gainsaid that an accused must have a speedy trial regardless of such comity arrangements, it does not follow that there has been purposeful discrimination because such a trial is not provided under the terms of the interstate compact.

Nothing we have said to this point contradicts the fact that it is constitutionally unacceptable for the Commonwealth to formally accuse the defendant of murder by filing the detainer and then without good cause take no action for eighteen months. In *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575 (1969), the United States Supreme Court put to rest the frequently criticized but widely held view that a state bringing charges against a prisoner confined by another state or the Federal Government need make no effort to prosecute him until he is released from custody. We

implemented that decision in *Commonwealth v. Clark*, 439 Pa. 192, 266 A. 2d 741 (1970) and again in *Commonwealth v. Ditzler and Ruhl*, 443 Pa. 73, 277 A. 2d 336 (1971), where we said that *Smith v. Hooey*, supra, and *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988 (1967) had retroactive effect.

It is self-evident and has been so held that "a prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law." *Coffin v. Reichard*, 143 F. 2d 443, 445 (6th Cir. 1944) ; cf. *Commonwealth ex rel. Bryant and Goldstein v. Hendrick*, 444 Pa. 83, 280 A. 2d 110 (1971). Hence it was by right and not by grace that Bunter asked for a speedy trial.

Neither the people of this state nor the appellant, Bunter, are well served by this sort of inaction on the part of prosecuting officials. A long delay may make it more difficult for the government to prove its charges beyond a reasonable doubt. On the other hand, appellant's ability to refute the charges brought against him may have been grievously affected. The touchstone must be that "[t]he right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed . . . . Stale claims have never been favored by the law, and far less so in criminal cases." *Dickey v. Florida*, 398 U.S. at 37.

Because the remedy for denial of speedy trial is dismissal of the charges, *Commonwealth v. Clark*, 439 Pa. 192, 195, 266 A. 2d 741 (1970) this case is remanded to the trial court for a determination of whether this right has been violated. Such a determination will involve appellant affirmatively showing that such delay, unreasonably caused by the Commonwealth, was oppressive and prejudicial, *Commonwealth v. Ditzler and Ruhl*, supra, at 80.

It is so ordered.

Mr. Justice Pomeroy concurs in the result.

Mr. Justice Jones and Mr. Justice Roberts took no part in the consideration or decision of this case.

Mr. Justice Cohen took no part in the decision of this case.

———

Dissenting Opinion by Mr. Chief Justice Bell:

The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a *speedy and public trial, . . .*" Although this defendant had been incarcerated (in prison) in another State, for a crime committed in that State, the Majority Opinion provides for a remand to our lower Court for a determination of whether defendant was denied a speedy public trial. The Majority wisely attached a condition to the Order of remand, requiring defendant to prove that the delay in bringing him to trial was unreasonably imposed by the Commonwealth and was oppressive and prejudicial.

This question of the right to a speedy public trial has worried me for several years, especially because of the enormous backlog in Philadelphia of undisposed-of murder indictments and of other undisposed-of indictments for felonies. While considerable progress has been made by the District Attorney and the Courts of Common Pleas in reducing these backlogs, there are still, as of August 30, 1971, a total of 350 untried homicide indictments, which include 55 deferred cases. Not including the deferred cases, the range of time within which homicide cases come to trial after indictment, is from eight to sixteen months, with the "average" length of time about ten months. There are also presently 5,000 additional untried criminal cases in Philadelphia.*

———

* As of August 31, 1971, there was a total of 10,990 civil cases at issue and ready for trial (including both jury and nonjury

The aforesaid Constitutional provision for a speedy public trial is mandatory, but so is the Constitutional prohibitory mandate with respect to the establishment of religion, or prohibiting the free exercise thereof, or abridging of freedom of speech, or of the press, or the right to peaceably assemble as set forth in the First Amendment, or the defendant's right of confrontation (set forth in the Sixth Amendment). Yet none of these mandated or guaranteed Constitutional rights is absolute! I believe we should and must approach and decide these Constitutional provisions and issues *realistically*, as has been done by the Supreme Court of the United States in the recent cases of *Illinois v. Allen,* 397 U.S. 337, *Mayberry v. Pennsylvania,* 400 U.S. 455, and previously in *Duncan v. Louisiana,* 391 U.S. 145, and in *Bloom v. Illinois,* 391 U.S. 194. (See *DeStefano v. Woods,* 392 U.S. 631.)

The tidal wave of crime which is sweeping our Country has made a realistic interpretation an imperative necessity. On this basis and for these reasons, I disagree with the Majority Opinion and must dissent.

---

cases). The average length of time from the certificate of readiness to trial in a civil jury case is 46.8 months, and in a nonjury case 18 months or less.