**Walter Haven REED, Petitioner,**

v.

**Dr. P. J. CICCONE, Respondent.**

**No. 19668–1.**

United States District Court,
W. D. Missouri, W. D.

May 1, 1972.

Gary Eldredge, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

Bert C. Hurn, U. S. Atty., Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER

### I.

JOHN W. OLIVER, District Judge.

This case pends on petitioner's motion for an evidentiary hearing. Attached to the government's memorandum in opposition to that motion is a letter dated February 23, 1972, from Ronald Townsell, Superintendent, Adult Parole Division, State of Illinois, to Dr. P. J. Ciccone, Director of the Medical Center. That letter makes clear that the detainer lodged against petitioner by the State of Illinois "is to serve the purpose of notification only" and that it should not be considered in a manner which would "affect the consideration by federal authorities concerning the subject's custody classification and programming in the Medical Center." The government's response further establishes that Medical Center authorities are considering the detainer in question in a manner consistent with the above letter and that the petitioner, subsequent to the receipt of Mr. Townsell's letter, has been placed in minimum custody and is on the list for minimum custody housing.

In the pending motion, counsel for petitioner suggests that this Court should conduct an evidentiary hearing for the purpose of determining the practices of the Illinois Board of Parole and whether or not detainers relating to untried state charges should under any circumstances be honored by the Federal Bureau of Prisons.

However, under the factual circumstances now presented, it is apparent that, so far as the petitioner in this case is concerned, the Illinois detainer is not being recognized in any manner which affects his present custody by the federal authorities or in any manner which could be said to deprive him of any federally protected constitutional right. Accordingly, the question presented here has become basically the same as that decided in Cullen v. Commonwealth of Virginia, (unreported) No. 19912–1, W. D.Mo., December 13, 1971 in which we refused to entertain an action for a declaratory judgment and restraining order. The petitioner in that case attempted to put in issue his right to a speedy trial on the state charge upon which the detainer there involved was based. We pointed out in our unreported Memorandum and Order of December 13, 1971:

This Court has clearly stated its view with regard to its jurisdiction over state detainers in Vaughn v. State of Missouri, 265 F.Supp. 933 (W.D.Mo., 1967); Norton v. State of Missouri, (unreported) No. 17963–1, W.D.Mo., January 16, 1970; and Middleton v. Swenson, (unreported) No. 18995–1, W.D.Mo., January 27, 1971. *Vaughn* states at page 734 [934] that:

The law is clear that in the absence of exceptional circumstances, not present here, considerations of comity require that this Court not intervene or attempt to exercise jurisdiction over the administration of the criminal law of the State.

The proper course of action for the movant is described at 265 F.Supp. at 935:

[Movant's] proper remedy is in the courts of [Virginia] where the charges are presently pending. If [movant] wishes to protect his federal constitutional right to speedy

trial he should presently proceed by appropriate motion in the [Virginia] courts. . . . Should present relief be denied, the [movant] will have preserved the question for presentation again at the time of trial. Any denial of the alleged right of speedy trial could then be appealed to the highest court of the State and, upon denial, further review could be sought in the Supreme Court of the United States.

In this way, movant can assert properly his constitutional right to a speedy trial and his privilege against self-incrimination.

## II.

The processing of this case has placed in vivid focus the amount of time that judges, United States Attorneys, defense counsel, and correctional authorities are required to spend because of the indiscriminate administration of procedures for the handling of what in most instances are nuisance detainers. In order that that time not be totally wasted, we direct publication of this memorandum opinion and, as an accompanying appendix, two earlier memorandum opinions we have written in this case.

It is our hope that the Bureau of Prisons will, in light of what is stated therein, make an appropriate review of its practices concerning detainers and, if necessary, amend existing policy statements and promulgate appropriate regulations so as to avoid a repetition of the circumstances revealed by this case.

Accordingly, it is

Ordered that petitioner's motion for an evidentiary hearing should be, and the same hereby is, denied. It is further

Ordered that petitioner's petition for writ of habeas corpus should be, and the same is hereby, denied.

## APPENDIX A

### MEMORANDUM AND ORDER

Petitioner's traverse filed on November 22, 1971 alleges that he was arrested in Cleburne, Texas, pursuant to the warrant issued October 1, 1970, by the Adult Parole Division of the Department of Corrections of the State of Illinois. That warrant is attached as Exhibit Number 4 to the respondent's response filed on November 5, 1971.

Petitioner also alleges that he was not taken into federal custody until January 14, 1971 and that the reason he was then taken into federal custody was because the State of Illinois refused to execute their warrant of October 1, 1970.

It is apparent, however, that the warrant which Illinois allegedly refused to have executed is now considered as a valid detainer which has the practical effect of depriving the petitioner of rights to which he would otherwise be entitled.

Exhibit A attached to petitioner's recent traverse reflects commendable and appropriate activity upon the part of the Medical Center's staff to have a detainer from the municipal court of the County of Marin, California, withdrawn. In White v. Wilson, (W.D.Mo., 1969) 301 F.Supp. 469, 473, we directed attention to the statement of the Honorable Fred T. Wilkinson, presently the Director of the Missouri Department of Corrections, but made while he was serving as warden of the United States Penitentiary at Atlanta. Mr. Wilkinson observed that approximately eighty-five percent of all detainers are lifted and never carried through and also described "nuisance" type of detainers as "vicious," and serving only as "the means of applying vindictiveness and vengeance."

It would seem obvious that if the State of Illinois has in fact once refused to have its warrant of October 1, 1970 executed, it had a valid reason for taking such action and that it would not at this late date change its mind in regard to its decision that it did not want to bring petitioner back to the State of Illinois. It would furthermore seem obvious that the United States should not consider as valid a warrant which the State of Illinois may have expressly declined to have executed.

In order to resolve any apparent question concerning the factual situation presented, it is

Ordered that within ten (10) days from the date of this order the respondent shall state definitively whether the State of Illinois in fact directed that its warrant dated October 1, 1970 should not be executed at some time between January 7, 1971 and January 14, 1971, as petitioner alleges. It is further

Ordered that within ten (10) days from the date of this order respondent shall attach to the Supplemental Response herein ordered, such information it may have, if any, that the State of Illinois intends to take any action concerning its October 1, 1970 warrant different from that which it may have indicated between January 7, 1971 and January 14, 1971. It is further

Ordered that the respondent attach any correspondence it may have had with the State of Illinois similar to that reflected by Dr. Manire's memorandum of November 9, 1971 which reflects highly commendable action in getting the "nuisance" detainer from California withdrawn.

If no correspondence has been had with the State of Illinois, respondent shall state the circumstances which distinguish the California warrant from that issued by the State of Illinois on October 1, 1970.

December 3, 1971.

## MEMORANDUM AND ORDER

On September 13, 1971, we issued our initial order for the respondent to show cause why the relief sought in petitioner's petition for habeas corpus should not be granted. That petition raised substantial questions concerning the condition of petitioner's confinement which was allegedly influenced and limited by reason of the respondent's recognition of a detainer filed by the Illinois Pardon and Parole Board.

On September 23, 1971, the respondent moved for an enlargement of time within which to file a response to our order to show cause, indicating that he wished to make inquiry of the State of Illinois Adult Parole Division in order to ascertain its views concerning the detainer. In accordance with that motion, respondent, as requested, was granted until October 11, 1971, within which to respond to our September 13, 1971 order to show cause.

It was not, however, until November 5, 1971, that respondent filed his response. Respondent stated in that response that "it would appear that the prerogative concerning the placement and recall of the Illinois detainer lies with the Illinois authorities." Respondent also stated that he "would expect to be cooperative in furnishing information concerning petitioner's institutional adjustment should the Illinois authorities request such."

On November 22, 1971, petitioner filed a traverse in which he challenged the validity of particular Policy Statements of the Medical Center for Federal Prisoners. That traverse, which also raised substantial questions of fact, prompted our memorandum and order of December 3, 1971. In that order, for reasons fully stated, we directed that (1) respondent state definitively whether the State of Illinois in fact directed at sometime between January 7, 1971 and January 14, 1971 that its warrant dated October 1, 1970, should not be executed; (2) respondent attach to a supplemental response such information that he may have, if any, as to whether the State of Illinois intends to take any action concerning its October 1, 1970 warrant different from that which it may have indicated between January 7, 1971 and January 14, 1971; and (3) any correspondence which may have been had with the State of Illinois similar to that reflected by Dr. Manire's memorandum of November 9, 1971, in regard to getting rid of "nuisance detainers" from California be attached to the supplemental response. We also directed that if no correspondence had been had with the State of Illinois that respondent state the circumstances which distinguished

the California warrant from that issued by the State of Illinois.

On January 17, 1972, respondent filed a supplemental response. That response attached a letter from the Executive Secretary of the Illinois Parole and Pardon Board dated September 28, 1971, which stated that "other charges took precedent over ours and Illinois had no opportunity to return Reed to this state." That letter does not state whether Illinois has ever made an appropriate request for petitioner's return to Illinois pursuant to 18 U.S.C. § 4085.

The supplemental response also stated that various telephone calls, apparently prompted by procedures directed in this case, had been made between Illinois authorities, the Assistant Legal Counsel for the United States Bureau of Prisons, and the United States Attorneys in this district. Respondent's supplemental response prayed that leave be granted to supplement the supplemental response "upon receipt of further communication from the Illinois authorities."

In accordance with the respondent's request, his response shall be fully and finally supplemented on or before January 31, 1972. Respondent should be advised, however, that unless action is taken which is satisfactory with regard to the petitioner's detainer, this Court intends to appoint the Federal Public Defender to represent the petitioner in order that the complicated legal questions presented may be given appropriate consideration.

As we suggested in our order of December 3, 1971, the problems created by detainers have been of long standing. Judicial consideration of some of those problems, of course, was accelerated by the Supreme Court's decision in Smith

v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). That case cited with approval the article published by the Honorable James V. Bennett, "The Last Full Ounce," 23 Fed.Prob. No. 2, p. 20 (1959). Mr. Bennett had pointed out fourteen years earlier in his article "The Correctional Administrator Views Detainers," 9 Fed.Prob. No. 3, p. 8, at 9 (1945), that it was "pointless to spend funds for the training of an inmate if he is merely to be graduated to another institution where the job of training may be undone or where skills acquired become atrophied through disuse." Mr. Bennett's concluding remarks in "The Last Full Ounce," stated that "when I wrote about it fourteen years ago [referring to his 1945 article] the detainer situation was disheartening. In 1959 I find that its seriousness has not abated, . . . [but] at least a start has been made to reduce this evil, . . . [and] perhaps fourteen years from now I, or someone similarly situated, can report significant progress."[1] His fourteen years have almost run out and the legal and constitutional questions in regard to the validity of practices which have grown up in connection with detainers, except for Smith v. Hooey, remain largely unanswered.

Smith v. Hooey cited with approval the Note, "Detainers and the Correctional Process," 1966 Wash.U.L.Q. 417 (Dec. 1966). That article pointed out that, for the most part, the whole system of detainers grew up extra-judicially, and that "detainers are by no means binding on the incarcerating authorities" and their recognition is based solely upon principles of comity. It also stated that:

The detainer system has been developed by prosecutors and penal authori-

---

1. Some progress on some of the questions presented by the detainer system was made when Congress, in recognition of the impact of Smith v. Hooey, permitted the United States and the District of Columbia to become parties to the Interstate Agreement on Detainers by its enactment of Pub.L. 91–538, Act of December 9, 1970, 84 Stat. 1397–1403. That

Agreement, however, is applicable only to "detainers based on untried indictments, informations, or complaints" and does not cover a parole violator's detainer. See 1966 Wash.U.L.Q. 417 at 437. Neither the United States nor the District of Columbia have become parties to the Interstate Compact for the Supervision of Parolees and Probationers.

ties as a semi-official answer to some of the problems in the administration of criminal justice caused by the sovereignty of the several states. . . . As it stands today, the system is unsatisfactory; it causes problems as serious as those it was intended to alleviate . . .. Many of the system's inadequacies stem from the fact that it was developed by administrators for administrators, with little interference from courts or legislatures. It is, therefore, not surprising that convenience and expediency are its main concerns, rather than protection of the rights and welfare of individual detainees.

The rationale of Smith v. Hooey commands that courts may no longer refuse to direct appropriate inquiry into the existence and exercise of power implicit in the practices which apparently call for almost automatic recognition of detainers. Respondent has indicated that it is the prerogative of Illinois, rather than that of the United States, to control the impact of a detainer on the conditions of confinement in a federal correctional institution. Cases such as United States ex rel. Howard v. Ragan, (N.D.Ill. 1945) 59 F.Supp. 374, which dealt with the powers of the Illinois Board of Parole, and McCowan v. Nelson, (9 Cir., 1970) 436 F.2d 758, which points out that "there is substantial authority for the position that due process requires reasonable diligence in the issuance and execution of a warrant for arrest for an alleged parole violation," indicate respondent's position may not be tenable.

Respondent shall, therefore, be prepared, should it become necessary under the circumstances of this case, to defend its assertion that the prerogative to deal with the problems presented in this case lies with the Illinois authorities, rather than the United States. Respondent should also anticipate that it may be required to answer the attacks made upon its Policy Statements, as those attacks are made in petitioner's traverse, and as additional attacks may be made by the Federal Public Defender in the course of his representation of the petitioner, should it become necessary that he be appointed.

Respondent attached to its supplemental response a Special Progress Report in regard to the petitioner, apparently for the commendable purpose of advising the Illinois State Board of Parole of petitioner's current institutional status, adjustment, and release plans. We do not believe that we violate any considerations of confidentiality by stating that the petitioner's report reflects that he has maintained a clear conduct record during the period of his federal commitment. That report, however, shows on its face that "as of this time [January 11, 1972], the institution has been unable to verify release plans inasmuch as there is an existent detainer on record." The report also indicates a possible job opportunity and other plans of a personal nature consistent with rehabilitation.

Because those factors may be relevant in future litigation, an appropriate order will be entered directing the federal correctional authorities to make the same verification ordinarily made in connection with a person against whom detainers are not filed in order that the factual circumstances in that connection will be available, should an evidentiary hearing be necessary in connection with the further processing of this case.

It is therefore

Ordered that respondent shall file a second supplemental response to our memorandum and order of December 3, 1971, on or before January 31, 1972. It is further

Ordered that the specific provisions of the orders in our memorandum and order of December 3, 1971 be responded to more particularly than respondent has thus far done. It is further

Ordered that further proceedings will be directed in this case consistent with what we have stated above after we have considered the second supplemental response ordered herein. It is further

Ordered that respondent shall verify petitioner's release plan as above indicated so that such information will be available in the event an evidentiary hearing is necessary in connection with this case.

January 20, 1972.

