James G. **PALMER**, Petitioner,

v.

**JUDGE AND DISTRICT ATTORNEY GENERAL OF the THIRTEENTH JUDICIAL DISTRICT OF TENNESSEE**, Defendants.

No. C–75–50–E.

United States District Court,
W. D. Tennessee, E. D.

March 3, 1976.

Jef Feibelman, Memphis, Tenn., for petitioner.

David L. Raybin, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

## MEMORANDUM DECISION

McRAE, District Judge.

In June 1975 James G. Palmer, acting *pro se*, filed this suit, titled "Motion—Writ of Mandamus," seeking to have a 1959 Gibson County Tennessee indictment quashed and a renewed 1975 detainer filed against petitioner in Illinois ordered withdrawn. The petitioner claims that he has been denied his rights to a speedy trial by the appropriate officials of Tennessee.

This Court ordered this suit to be treated as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Subsequently the Court denied the State's Motion to Dismiss, ordered the State to file an answer, issued a Writ of Habeas Corpus Ad Prosequendum directing that Palmer be delivered to this District for an evidentiary hearing, appointed local counsel to represent petitioner at said hearing, and later conducted the evidentiary hearing.

Palmer is presently serving a 180-year sentence in Illinois for a 1960 murder conviction. At the time of his arrest in Illinois in 1959 he allegedly was coerced into signing a confession to the Illinois crime and also to a murder in Gibson County, Tennessee.

In December 1959 Palmer was indicted by the Grand Jury for Gibson County, Tennessee, for murder. The case was docketed as Number 2960 of the Humboldt Law Court of Humboldt, Gibson County, Tennessee, and on April 20, 1960, a warrant was issued for Palmer by the Gibson County sheriff. However, on motion of the District Attorney General, the indictment was "retired on leave to re-instate." The Sheriff of Gibson County was ordered to "place a hold order on the defendant, from the state of Illinois where he was convicted and sentenced to 180 years in the penitentiary of that state." Pursuant to that order, on March 2, 1962, a detainer was filed with the Illinois authorities.

On January 25, 1967, the petitioner wrote the Judge of Gibson County for information concerning the indictment; however, he received no answer to his inquiry. In June of 1967 he submitted a "Petition for a Writ of Mandamus" to the state court in Gibson County, Tennessee, in which he asked to be brought forthwith to trial. A copy of this application was also sent to the Governor of Tennessee. That copy in turn was forwarded by Henry. C. Foutch, Assistant

Attorney General for the State of Tennessee, to William R. Kinton, District Attorney General. General Kinton was requested to take whatever action he deemed necessary and advisable in connection with this matter. No action was taken at all. On March 1, 1970, the petitioner wrote General Kinton and asked what actions had been taken in regard to his petition and again Palmer received no response to this inquiry.

On May 25, 1970, the petitioner filed a Motion to quash the fugitive warrant and dismiss charges in the state court in Gibson County, asking that the charge be dismissed for want of prosecution and that the warrant lodged against him with the Illinois authorities be withdrawn. By this time more than ten years had passed since Palmer was indicted and a detainer placed on him by the State of Tennessee.

Having received no answer from, nor satisfaction in, the Tennessee state courts, Palmer filed a "Petition for Writ of Mandamus" in this Court in the Eastern Division against the same defendants who are presently defendants in this suit.[1] In the meantime, on January 26, 1971, Palmer filed another petition in Humboldt, Gibson County, Tennessee, to quash the warrant. The former suit in this Court asked that the indictment against the petitioner be quashed for want of prosecution and that the warrant with the Illinois authorities be ordered withdrawn. That case was dismissed by this Court's Order on August 12, 1971, because in the June 1971 term of the Humboldt Law Court a Consent Order was entered on the State's Motion withdrawing the detainer on Palmer. In addition, Lawrence Jackson, Sheriff of Gibson County, wrote the following letter to the Illinois State Penitentiary at Joliet, Illinois, on August 9, 1971:

> Please refer to your file on the above named subject. [Palmer] *This is our official notice to you that we do not wish to prosecute this subject. You may release him when his time is up and return our detainer to this office.* Thanking you in advance for your cooperation . . . . [emphasis added]

A copy of this correspondence was forwarded to this Court by General Kinton, by a letter dated August 9, 1971, setting out, among other things, that it was at his direction that the Sheriff of Gibson County wrote the Illinois State Penitentiary at Joliet.

However, without explanation, and in complete contradiction to the 1971 assurances given to this Court and to the petitioner, a new *capias* was issued for the defendant on the 1959 indictment by the Humboldt Law Court in 1975. This process was forwarded on April 20, 1975, to the Illinois State Penitentiary by James C. Greenhaw, Sheriff of Gibson County, Tennessee. In a letter of the same date Mr. Greenhaw stated, "The purpose of this letter is to place a renewal on the Detainer Warrant which was sent to you some time ago in regard to Mr. Palmer." The letter further requested the Illinois officials to contact the Sheriff of Gibson County "as soon as his [Palmer's] time is up there with you so that we [Tennessee] might instigate extradition proceedings to return this subject to the State of Tennessee for trial purposes."

### Exhaustion of State Remedies

■ The State's position is that petitioner has not exhausted his Tennessee

---

1. Palmer also tried non-judicial channels in an attempt to determine the status of his petitions. On July 20, 1970, he wrote the Tennessee Bar Association for help. On September 7, 1970, Supreme Court Justice Joe Henry, then President of the Tennessee Bar Association, wrote the Illinois State Penitentiary in Joliet, Illinois, to have them inform Palmer that he, Henry, "was in the process of obtaining information recently requested by him [Palmer]."

On October 13, 1970, Justice Henry wrote to Palmer, telling him that there were two habeas corpus petitions pending in Tennessee, presumably the petitions of June 1967 and May 1970. Justice Henry also told Palmer that he had been advised by the District Attorney General that action would be taken in the Humboldt Law Court "within the next few days." (Justice Henry quoting the District Attorney General.) Again, no action was taken.

remedies upon his claims concerning his denial of a speedy trial under the Sixth Amendment of the United States Constitution, and that there are no extraordinary circumstances which justify this Court's intervention into the merits of this speedy trial claim. Petitioner, on the other hand, asserts that he is being held in violation of the Sixth Amendment right to a speedy trial by virtue of the detainer warrant which the State of Tennessee has placed against him in Illinois.[2] 28 U.S.C. § 2254 indeed requires an exhaustion of state remedies before a United States District Court shall entertain an application for a Writ of Habeas Corpus by a person in custody pursuant to a state court judgment. However, an exception to this rule arises when it appears "that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b).

■ From the undisputed history of the petitioner's efforts to obtain relief in the state courts, the State has unjustifiably failed to act or respond, therefore this Court concludes that it should dispense with another attempt of state remedy. On June 18, 1967, Palmer filed a Petition for Writ of Mandamus in Circuit Court of Gibson County. It is undisputed that the State had knowledge of this Petition as evidenced by the June 20, 1967, letter from General Foutch to General Kinton requesting Kinton to act upon said Petition. However, no action was taken. Again, in May 1970, petitioner sent another Petition to quash the warrant. Both of these Petitions were pending in Tennessee Courts on October 13, 1970, the date of Mr. Justice Henry's letter to the Illinois Penitentiary. (See footnote 1, *supra.*) At that time Justice Henry informed Palmer that he had been told by the District Attorney General that "action will be taken in the

Humboldt Law Court 'within the next few days.'" Still no action was taken on any petition and to this date no action apparently has been taken in the state courts.

The United States Court of Appeals for the Sixth Circuit has ruled that where there are circumstances rendering the state corrective process ineffective to protect a prisoner's rights, federal habeas corpus relief may be granted without requiring a futile exhaustion of state remedies. *Terry v. Wingo,* 454 F.2d 694 (6 Cir. 1972); *Lucas v. People of State of Michigan,* 420 F.2d 259 (6 Cir. 1970). In *Allen v. Leeke,* 328 F.Supp. 292, 294 (D.S.C.1971), Judge Russell catalogued the reported cases in which the state's delay has warranted dispensing with the requirement of exhaustion. This list is informative because the longest delay recorded was two years: *U. S. A. ex rel Hill v. Deegan,* 268 F.Supp. 580 (S.D.N.Y.1967). In *Cresta v. Eisenstadt,* 302 F.Supp. 399 (D.Mass.1969), the fact that the state court was in recess for three months following prisoner's filing for a habeas writ, thus denying petitioner any opportunity to a hearing in that time, warranted disregard of the requirement of exhaustion. Palmer has been denied a hearing or other disposition of his petitions for at least 60 months and perhaps as long as 96 months.

■ The State also urges that principles of federalism and comity militate against this Court's interference in the determination of Palmer's Sixth Amendment contentions. This Court is in full agreement with the principle of comity. Theoretically, the individual will not be disadvantaged by this doctrine, since state courts as well as federal courts are bound by the strictures of the United States Constitution. However, this theoretical premise assumes that the states will allow the individual to present his claims in the state forum without overly burdensome procedural snarls and that

---

**2.** *See, Braden v. Thirtieth Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

such forum will render its decision on those claims with reasonable dispatch. When the state does not act in such a manner, the effect of the exhaustion doctrine and comity is "to shield an invasion of the citizen's constitutional rights." *U. S. A. ex rel. Johnson v. Rundle,* 286 F.Supp. 765, 767 (E.D.Pa.1968), quoting *Jordan v. Hutcheson,* 323 F.2d 597, 601 (4 Cir. 1963).

The State asserts that this Court should refrain from acting since petitioner can present these same claims at his upcoming state trial. "The fact that the state may finally be ready to move when the federal court raises its hand is no cure for the infection and potentially irreparable injury wreaked by the delay." *U. S. A. ex rel. Hill v. Deegan,* 268 F.Supp. 580 (S.D.N.Y.1967).

### Sixth Amendment Claim

The question of whether the petitioner has been denied his Sixth Amendment right to a speedy trial is governed by the United States Supreme Court's decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). That case set forth four factors which must be considered in determining whether or not a criminal defendant has been denied a speedy trial.

1. *Length of delay.* Petitioner was indicted by the State of Tennessee in December of 1959. Therefore more than 16 years have elapsed since this indictment. This length of delay speaks for itself.

2. *Reason the state assigns to justify the delay.* The sole reason given by the State to justify its delay is the State's belief that the petitioner would never be subject to parole in Illinois and that other states also had detainers on Palmer. This is not only insufficient but also an improper reason for refusing to make a diligent, good-faith effort to bring petitioner to trial in the state courts of Tennessee. *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Nelms v. State,* Tenn. (1976). In essence, the State has relied on informa-

tion given to it in 1959 and 1962 in Illinois as its rationale for having made no efforts in the subsequent thirteen years to bring petitioner to trial.

3. *Petitioner's assertion of his right to a speedy trial.* The record does not reveal when the petitioner was first advised that an indictment was pending against him in the State of Tennessee. Indeed, as of April 29, 1960, the indictment was not in a pending status against him although a detainer warrant was placed on the defendant in the State of Illinois. This placed the petitioner in the anomalous position of having to request that his indictment be reinstated as well as being tried in the State of Tennessee. Nonetheless, the record amply demonstrates that petitioner made repeated efforts to assert his right to a speedy trial. These efforts culminated in the petition which was filed in this Court in 1970. Obviously the petitioner made no assertions after 1971 due to the State's response to the earlier action in this Court to the effect that petitioner was not going to be prosecuted by the State of Tennessee. Furthermore, when the State reversed course and renewed its detainer on April 20, 1975, Palmer renewed his attempts to get a state court resolution of his claim by sending a letter on May 29, 1975, to the Clerk and Judge in Humboldt seeking a speedy dispensation of either the 1970 or 1971 petition to quash the warrant of the state court.

This action was instituted shortly thereafter.

4. *Prejudice to the defendant.* There are several types of prejudice which can result to a criminal defendant as a result of being denied a speedy trial.

(a) *Oppressive pre-trial incarceration.* The present action is an example of how a criminal defendant can be prejudiced by oppressive incarceration as a result of denial to him of his right to a speedy trial. It is apparent from the record that the petitioner has pursued a remarkable rehabilitation effort in the State of Illinois. The record reflects numerous letters of commendation written

by doctors and supervisors who have worked with petitioner in various prison jobs. Moreover, Palmer has amassed remarkable scholastic credentials while in the Illinois prison system, including a Bachelor of Arts degree from Lewis College and certificates of competency in the area of group counseling. Because of this rehabilitation effort and petitioner's ability to counsel other prisoners, the State of Illinois wishes to place the petitioner in a minimum security prison. Such placement is a step on the road to petitioner's eventual parole. Upon parole, Palmer hopes to do counseling in a halfway house in Illinois. However, it is the policy of the State of Illinois not to send a prisoner to a minimum security institution if a detainer is outstanding against him. Thus, the detainer placed on petitioner by the State of Tennessee is preventing his placement in a minimum security institution, and it appears to be a bar to his opportunity to assume a meaningful position in society.

■ (b) *Impairment of defense.* A lapse of 16 years is *per se* an impairment of Palmer's ability to defend himself; however, petitioner, at the evidentiary hearing, testified that through death or disappearance he would be deprived of defense witnesses if he were tried now as opposed to a time soon after the alleged offense charged against him took place. Palmer testified that he could have called several alibi witnesses. While the Court makes no finding as to what these witnesses would have testified, the fact remains that their testimony might have created some doubts in the minds of the jurors.

More importantly, Palmer alleges that the confession he gave (Hearing Exhibit 21) in Illinois in 1959 was coerced and involuntary. Palmer asserts that he first confessed to a jailer at the Jerseyville, Illinois jail, and that this jailer physically beat Palmer to force a confession from him. However, this jailer died in approximately 1963, according to the sources of Palmer. The issue of the voluntariness of the confession was crucial to Palmer's defense. While it is hardly likely that a jailer would testify that he beat the petitioner, there has been a deprivation of the right to question the person who first received the confession.

■ As was noted in *Barker v. Wingo, supra,* each case involving an alleged deprivation of the right to a speedy trial must be judged on its facts. Based upon these facts and the reasons set forth herein, the Court concludes that petitioner has been denied his Sixth Amendment right to a speedy trial. The most significant circumstance exists by virtue of the fact that the State of Tennessee stated to the petitioner and this Court in 1971 that prosecution for this crime was withdrawn.

### Relief

■ The federal habeas corpus statutes allow this Court to fashion broad relief in order to dispose of the matter as law and justice require. 28 U.S.C. § 2243. *See Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

■ This Court, having found and declared petitioner's Sixth Amendment right to a speedy trial to have been violated, hereby directs the state to withdraw its detainer warrant on petitioner filed with the Illinois State Penitentiary. Moreover, the Court directs that appropriate steps be taken so that indictment No. 2960 returned on December 28, 1959, in Gibson County, Tennessee, against petitioner James Gordon Palmer will be quashed forthwith.

The petitioner also sought declaratory and injunctive relief in this suit. This Court does not believe that declaratory relief is warranted or necessary because such relief is in effect granted in the writ of habeas corpus.

■ The remaining question concerning relief, therefore, is whether or not this is a proper case for injunctive relief. The Court does not feel that injunctive relief is necessary, for the following reasons. The Court has already held that petitioner's right to a speedy trial has

been violated. It is the practice in this jurisdiction that a member of the State Attorney General's Office represents the named respondents in these habeas corpus matters. However, in a larger sense, he also represents the State of Tennessee and all offices which, under the law of Tennessee, have responsibilities in the matter of apprehending and prosecuting persons who are charged with violating the law of Tennessee and who are in custody in other states. Therefore this Court considers that the necessary statutory officials are bound by this ruling required by the United States Constitution.

It is therefore ORDERED that a Writ of Habeas Corpus is hereby issued and that in lieu of releasing the petitioner from custody the appropriate officials of the State of Tennessee will see that the detainer warrant renewed against petitioner by letter dated April 20, 1975, be withdrawn; that indictment No. 2960 returned against James Gordon Palmer on December 28, 1959, is quashed; and that official notice thereof is sent to this Court.