■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND KENNETH SINGER, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Suffolk County, rendered October 29, 1975, convicting him of felony murder, upon a jury verdict, and imposing sentence. Judgment

affirmed. On October 22, 1970, at about 12:50 P.M., the body of 17-year-old Eileen Byrne was found by the police in an abandoned garage. She was clad only in a bra and had been strangled. A rope was found nearby. There were abrasions on the upper part of her right breast and on her left shoulder, contusions on each side of her groin area, blood around the external genitalia (she had been menstruating, however), lacerations at the anus consistent with trauma and discoloration and pressure marks on her wrists, consistent with her hands having been tied. No sperm was detected. The police discovered Eileen's body after being alerted by a town highway employee, Simon Flannery, that he had noticed that the doors of the abandoned garage, which were normally open, were closed, and that there was a blue car in the garage. On the morning of November 4, 1970 homicide detectives went to defendant's place of employment to arrest him for the shooting death of one Glen Patton, a crime unrelated to the Byrne homicide. As the detectives waited, defendant drove up to his employer's office in a blue car whose similarity to the one seen by highway employee Flannery in the abandoned garage did not escape the detectives' observation. Defendant was taken to the homicide squad office and, there, he admitted shooting Patton.* The detectives then showed him three pictures of the body of Eileen Byrne. Defendant thereupon sobbed, rocked back and forth and went into a catatonic trance, causing a police surgeon to recommend immediate hospitalization. Defendant was ultimately sent to Central Islip State Hospital. Thereafter he was represented by attorney Ralph Lombardi on the Patton murder charge and was a strong suspect in the Byrne murder, as well as in two others. Defendant negotiated a plea to manslaughter in the first degree on the Patton murder charge, but Lombardi's effort to include the Byrne homicide in that plea was rejected by the District Attorney. No indictments had been handed down or arrests made in the Byrne and other two homicides of which defendant was suspected. On May 27, 1971 defendant was sentenced to an indeterminate term with a maximum of 10 years on the Patton homicide; he was released on parole in October, 1973. Prior thereto, the police had not obtained any confession from defendant and, while in jail on the Patton charge he had rebuffed a police effort to interview him. By the end of March, 1971, the police had developed a circumstantial case against defendant with respect to the Byrne murder. Among the scientific evidence were police laboratory reports strongly tending to establish that white paint from the garage had come off on defendant's car, that blue paint from his car had come off on the garage, that blood and hair found in defendant's car were from Eileen Byrne and that hair found on Eileen's body was defendant's. The police also found, on October 23, 1970, a motorist who, on the morning of October 22, 1970, had seen a girl answering Eileen's description enter a blue car matching the description of defendant's, including the letters "EN" from the license plate. That witness did not immediately report to the police his recollection of the letters "EN", however. Though he claimed to have recalled it prior to November 4, 1970, the first written police report stating that the witness was familiar with the license plate bearing the letters "EN" was dated November 4, 1970, the same day that the witness was shown defendant's car. Although homicide detectives investigating the Byrne murder were of the opinion, by March, 1971, that there was enough evidence to charge defendant with the Byrne murder and to present the case to a Grand Jury, even without a confession, their superiors and the District Attorney appar-

---

* The facts as to the Patton case were elicited at the *Huntley* hearing in this case.

ently thought otherwise, and directed that there be further investigation. We note that two elements then missing from the case against defendant were the absence of an eyewitness placing him at the scene and the lack of a confession by him. As noted, he had rebuffed a police attempt to interview him while he was in jail on the Patton charge. In April, 1974 the police and District Attorney, purporting to be concerned about certain homicides in the area where defendant was then living, decided that it was time to arrest him and charge him with the Byrne homicide. Defendant was induced to come to the police station in connection with an unrelated *larceny* investigation (which later became a mere civil matter). After an interview on May 9, 1974 on the larceny case, defendant was placed under arrest for the *Byrne* murder and was taken to homicide headquarters. The police claim that he was advised of his constitutional rights, waived them and voluntarily gave a complete confession to the Byrne murder. Defendant claims that he did not waive his rights, that he asked for but was denied an attorney and that the confession was beaten out of him with telephone books—instruments allegedly specially suited to leave no marks. Later that afternoon a reporter learned of defendant's arrest on the Byrne murder and called attorney Lombardi, who went to the police station. This was Lombardi's first contact with defendant since his sentence on the Patton case; another attorney had handled the Patton appeal. At the arraignment on May 10, 1974, Lombardi did not advise the court of the alleged police brutality. At the trial, in addition to the circumstantial evidence set forth above, the People presented testimony to the effect that, prior to October 21, 1970, defendant knew of the abandoned garage, that he worked on October 21, 1970, on which date a coworker noticed "nothing" about defendant's vehicle ("he kept in good shape"), that defendant reported sick on October 22, 1970 and did not work that day, that he worked on October 23, 1970, on which date the same coworker noted a white mark on the vehicle, and that on October 24, 1970 the car was "cleaned up" and there were "no more marks on the car". In our opinion the People established, beyond a reasonable doubt, that defendant's confession was voluntary and was procured without violation of his constitutional rights. The People also established, at a fair trial, by overwhelming evidence and beyond any reasonable doubt, that defendant was guilty of the felony murder of Eileen Byrne. One contention raised by defendant warrants special comment, viz., that the failure to lodge a detainer, arrest and formally institute a prosecution of him on the Byrne murder until May 9, 1974, even though the police could have done so by March, 1971, violated his constitutional rights. Defendant concedes that there is no constitutional right to be arrested *(Hoffa v United States,* 385 US 293, 310, rehearing den 386 US 951), but argues that his constitutional rights were violated because the delay was prejudicial and was part of a deliberate, purposeful and oppressive design (see *Chapman v United States,* 376 F2d 705, 707, cert den 389 US 881). We disagree. As noted in *Hoffa v United States (supra,* p 310): "There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." At bar, when the police and District Attorney decided, when defendant went to jail in 1971 on the Patton crime, not to arrest him

for the Byrne murder at that time, but to further investigate the matter, they did not have the benefit of the hindsight possessed by defense counsel at the 1975 trial and by defendant's counsel on this 1976 appeal, that nothing further of substance would be developed. In *1971*, however, there was always the possibility that defendant would make incriminating statements to fellow prisoners, acquaintances or the police, and that an eyewitness placing defendant in the abandoned garage might be located. Further, even applying hindsight, the 1971 decision of the police and District Attorney not to proceed on a circumstantial case is now shown to have been a sound prosecutorial judgment. Defense counsel made the following statement at the trial: "I could give you examples that I have read about, mistakes having been made with circumstantial evidence, the insidiousness of it, and I say this with all due respect. But, history is strewn with people having been convicted on circumstance, collective circumstance, and it has later been found out to be untrue." Defendant's appellate counsel, in his brief on this appeal, states: "Although the police claimed that they had sufficient evidence to convict defendant-appellant as far back as 1971, and, in fact, all of the major evidence presented at the trial had been accumulated at that early time, this does not mean that all evidence had to be conclusive in the minds of the jury or as a matter of law. At the outset, it must be remembered that no one testified that they saw Singer at or near the murder scene on October 22, 1970." We find no merit to defendant's contention that the delay prejudiced him by depriving him of the opportunity to work the Byrne homicide into the Patton plea package, and thereby to obtain a concurrent sentence. Even assuming, *arguendo,* that such a claim could be asserted in a proper case, defendant was then suspected of four homicides and the evidence established that the District Attorney flatly refused to dispose of the Byrne homicide as part of the Patton plea. Thus, defendant's argument that, if the Byrne case had commenced with an early arrest and indictment, he might have been able to dispose of it as part of the Patton plea, is more than speculative; it is contradicted by the evidence and is contrary to reasonable expectation (see *United States v Marion,* 404 US 307; cf. *Smith v Hooey,* 393 US 374). Margett, Acting P. J., Damiani, Rabin, Shapiro and Titone, JJ., concur.

