UNITED STATES of America

v.

Kenneth Joseph FROMAL.

Crim. No. 89–00310.

United States District Court, E.D. Pennsylvania.

Nov. 20, 1989.

Mary Crawley, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

James A. Lammendola, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This matter comes before the court upon the defendant's Motion to Dismiss the Indictment. The basis of the defendant's motion is a twenty-month delay between the commission of the alleged offense (possession of a firearm by a convicted felon, 18 U.S.C.A. § 922(g)(1) (West Supp.1989)) on November 25, 1987 and his indictment on August 8, 1989. In support of his motion, the defendant has alleged violations of the following: the Fifth and Sixth Amendments to the United States Constitution; Fed.R.Crim.P. 48(b); 18 U.S.C.A. §§ 3161(b), 3161(j), and 3162(a)(1) (West 1985 and Supp.1989) (Speedy Trial Act); and 18 U.S.C.A.App. §§ 2–9 (West 1985 and Supp.1989) (Interstate Agreement on Detainers Act). For the reasons given below, we shall deny the defendant's motion.

Before launching into a discussion of the law, however, we believe it helpful to set forth a brief chronology of relevant events in the instant case. On November 25, 1987, the defendant was arrested by Pennsylvania state police in conjunction with the investigation of a bank robbery which had taken place in Quarryville, Pennsylvania on November 20, 1987. Also on November 25, 1987, a revolver and live rounds of ammunition were found in the automobile that the defendant was driving at the time of his arrest. On May 3, 1988, a Federal complaint and warrant were filed against the defendant on the Federal gun possession charge. On May 12, 1988, a Federal detainer was lodged against the defendant, who was then in Lancaster County prison. On June 9, 1988, the defendant wrote to the Lancaster County Prison warden, re-

questing him to notify the appropriate prosecuting officials that he wished a final disposition of the Federal charge against him. On May 30, 1989, the Lancaster County Court of Common Pleas imposed upon the defendant a seven and a half to fifteen year sentence for the bank robbery charge, for which the defendant had been found guilty by a jury on May 12, 1988. On August 8, 1989, the defendant was indicted on the Federal gun possession charge. The defendant's trial date on this Federal charge was set for November 13, 1989. In light of this chronology, we now turn to a consideration of the applicable law.

FIFTH AMENDMENT ARGUMENT

■ If certain criteria are met, pre-indictment delay may give rise to a claim of deprivation of due process under the Fifth Amendment to the United States Constitution:

[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. Cf. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

*United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) (footnote omitted.)

■ In the instant case, the defendant argues that he has been prejudiced in the denial of favorable custody status in state prison where he was incarcerated, and, most significantly, in the preclusion of the possibility that the state judge who sentenced him for bank robbery might have run his state sentence concurrently with any Federal sentence he might have received, had he been convicted on the gun charge. In support of his argument that he has been so "prejudiced", the defendant cites to *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). *Smith*, however, concerned the Sixth Amendment [1] and its purpose of preventing oppressive incarceration prior to trial. It was within this frame of reference that the United States Supreme Court said: "[T]he possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Id.* at 378, 89 S.Ct. at 577 (footnote omitted). In the instant case, what the defendant must show in order to prove a violation of due process under the Fifth Amendment is that the pre-indictment delay "caused substantial prejudice to [his] *rights to a fair trial.*" *Marion*, 404 U.S. at 324, 92 S.Ct. at 465. (Emphasis supplied.) The defendant has offered us no arguments explaining how his right to a fair trial has been prejudiced by the delay.

■ Nor has the defendant succeeded in proving that this delay was "an intentional device" by the government "to gain tactical advantage" over the defendant. *Id.* In June of 1988, the United States Attorney involved with the defendant's case told the attorney then representing the defendant on the Federal charge that the Government was waiting to see what the sentence in the state court would be before deciding on the disposition of the Federal charge. The defendant has offered us no explanation as to how this decision offered the Government any "tactical advantage" in the trial of the gun possession charge. Nor can we ourselves find any. Accordingly, we find that the defendant's argument based upon the due process clause of the Fifth Amendment must fail.

SIXTH AMENDMENT ARGUMENT

■ In the instant case, the defendant argues that he has been denied his Sixth Amendment right to a speedy trial. The Sixth Amendment to the United States Constitution guarantees the "accused" the

---

**1.** As noted *infra,* the Sixth Amendment does not apply prior to the time an individual actually becomes an "accused."

right to a "speedy and public trial." The point at which this right attaches has been considered by the United States Supreme Court in *Marion*, 404 U.S. 307, 92 S.Ct. at 457. In *Marion*, the Supreme Court stated: "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Id.* at 321, 92 S.Ct. at 463. The situation of the defendant in the instant case does not fall within the category of "arrest and holding to answer a criminal charge." He was, however, indicted on the Federal charge on August 8, 1989. It was, thus, only at the time of his indictment that the Sixth Amendment guarantee of a speedy trial came into play. The defendant makes no argument that his rights were violated by any *post*-indictment delay.[2] Since the defendant became an "accused" entitled to the speedy trial guarantee of the Sixth Amendment only upon his indictment, we find that the defendant's use of the Sixth Amendment to attack the delay in the instant case must also be rejected.

### FED.R.CRIM.P. 48(b) ARGUMENT

Fed.R.Crim.P. 48(b) reads as follows:

If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

■ The defendant argues that this rule applies to him because the twenty-month gap between the alleged offense and the indictment constituted an "unnecessary de-

**2.** In support of his Sixth Amendment argument, the defendant has cited to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and the four factors to be considered in deciding whether a violation of the speedy trial guarantee has occurred: the length of the delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; and prejudice to the defendant resulting from the delay. *Barker*, however, was decided within the context of a post-indictment delay and, so, we need not ap-

lay in presenting the charge to a grand jury...." What the defendant has failed to note is that this rule applies to "a defendant *who has been held to answer to the district court*...." (Emphasis supplied.) The United States Supreme Court has said of Fed.R.Crim.P. 48(b): "The rule clearly is limited to post-arrest situations." *Marion*, 404 U.S. at 319, 92 S.Ct. at 462 (footnote omitted). It has also been said of Fed.R. Crim.P. 48(b): "It does not apply to a period of delay between the commission of the underlying offense and the commencement of an official criminal prosecution. [Citations omitted]." *United States v. Swan*, 545 F.Supp. 799, 803 (D.Del.1982). In the instant case, the twenty-month delay did not occur after any "arrest" on the Federal charge.[3] For this reason, the defendant's reliance upon Fed.R.Crim.P. 48(b) is misplaced.

### SPEEDY TRIAL ACT ARGUMENT

■ 18 U.S.C.A. § 3161(b) reads in pertinent part: "Any ... indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges...." In the instant case, the defendant was neither "arrested" in connection with the Federal charge nor "served with a summons" in connection with it. Since neither of these events occurred, the defendant cannot rely upon this provision of the Speedy Trial Act.

The language used in 18 U.S.C.A. § 3162(a)(1), which concerns sanctions, is worthy of some note. On May 3, 1988, a complaint and warrant concerning the Federal criminal charge were filed against the defendant. 18 U.S.C.A. § 3162(a)(1) reads in pertinent part:

ply the *Barker* factors in the context of the instant case.

**3.** At the hearing on the instant motion, held on November 13, 1989, the court considered the evidence presented and found that the arrest of the defendant on November 25, 1987 was not made on Federal charges, but instead was made by state police on state charges.

If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ... of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. . . .

Courts that have attempted the reconciliation of §§ 3161(b) and 3162(a)(1) have concluded that only a concurrence of a federal complaint and a federal arrest/summons will allow for a reasonable application of these two sections. "[T]he filing of a federal complaint without the concurrent action depriving a defendant of liberty for the purpose of facing charges is insufficient to trigger the Speedy Trial Act's timing provisions." *United States v. Bloom*, 865 F.2d 485, 491 (2nd Cir.1989), *cert. denied*, —— U.S. ——, 109 S.Ct. 1762, 104 L.Ed.2d 197 (1989). "In sum, in order for the time limitations of 18 U.S.C. §§ 3161(b) and 3162(a)(1) to become applicable, *both* a federal complaint and a federal arrest and/or federal summons are required." *United States v. Lee*, 818 F.2d 302, 305 (4th Cir.1987). (Emphasis in original).

In the instant case, a complaint was filed on May 3, 1988. No "arrest" or "summons" accompanied it. The defendant, therefore, cannot look to the mere filing of the complaint in the instant case as the trigger for the timing provisions of the Speedy Trial Act.

■ The defendant also relies upon 18 U.S.C.A. § 3161(j) in support of his motion to dismiss. Section 3161(j) reads:

(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.

(4) When the person having custody of the prisoner receives from the attorney for the Government a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that attorney for the Government (subject, in cases of interjurisdictional transfer, to any right of the prisoner to contest the legality of his delivery).

Section 3161(j) applies, however, only to a person "serving a term of imprisonment". At the time that the detainer was lodged, on May 12, 1988, and at the time that the defendant wrote to the warden of Lancaster County prison regarding the disposition of the Federal charge against him, on June 9, 1988, the defendant had not yet been sentenced in state court on the robbery charge.[4] He was, therefore, not yet "serving a term of imprisonment." Thus, the provisions of § 3161(j) do not come into play. Therefore, we find no merit in the defendant's argument that the Government violated the Speedy Trial Act by failing to comply with the requirements of § 3161(j), after his request to the Lancaster County Prison warden in June, 1988.

## INTERSTATE AGREEMENT ON DETAINERS ACT ARGUMENT

■ The defendant also enlists the Interstate Agreement on Detainers Act, 18 U.S.C.A.App. §§ 2–9 in support of his motion to

---

**4.** That sentencing did not occur until May 30, 1989.

dismiss. Article III(a) of the Act reads in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; ...

"[T]he IAD [Interstate Agreement on Detainers Act] does not apply to defendants in custody prior to commencement of service of sentence." *Crooker v. United States*, 814 F.2d 75, 77 (1st Cir.1987). In the instant case, the defendant could not have begun to serve his sentence until his sentencing on the robbery charge in state court on May 30, 1989. The one hundred and eighty day time limit set in the Act, thus, would start to run, at the earliest, on May 30, 1989. The trial date of November 13, 1989 set for the defendant comes within this time limitation. Thus, we find no merit in the defendant's argument based on the Interstate Agreement on Detainers Act.

For all of the reasons given above, we have decided to deny the defendant's Motion to Dismiss the Indictment.