IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2001 Session

## STATE OF TENNESSEE v. HAROLD LEONARD WHITE

**Direct Appeal from the Criminal Court for Knox County**
**No. 63235    Richard R. Baumgartner, Judge**

_____

**No. E2000-01888-CCA-R3-CD**
**January 29, 2002**
_____

The Defendant was arrested in September 1996 for aggravated assault, being a felon in possession of a firearm, and fleeing. His case was not set for trial until July 2000. The Defendant moved for dismissal of the charges on the ground that he had been denied his constitutional right to a speedy trial. The trial court granted the Defendant's motion, and the State now appeals as of right. Concluding that the trial court did not abuse its discretion in finding that the Defendant was prejudiced by the delay, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Mark E. Stephens, District Public Defender; Paula R. Voss (on appeal), Assistant Public Defender; and Jim D. Owen (at trial), Assistant Public Defender, Knoxville, Tennessee, for the Appellee, Harold Leonard White.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Marsha Selecman, Assistant District Attorney General, for the Appellant, State of Tennessee.

### OPINION

### FACTS

Late on the night of September 16, 1996, Knoxville police officers Dennis Pack and Lawrence Presnell, Jr. were called to Bonnyman Drive to investigate reports of shots being fired. Upon their arrival they found the Defendant and a white male arguing with each other. The police officers shined their flashlights on the combatants and told them to show their hands. The white male complied; the Defendant put his right hand behind his back and ran off. The Defendant ran to an apartment and reached to open the storm door. As he did so, Officer Presnell saw a pistol in one of his hands. The Defendant fled into the apartment with Officer Pack in hot pursuit.

Officer Pack testified that as he started to follow the Defendant out the back door of the apartment, the Defendant pointed a pistol at him. Officer Pack withdrew, but kept his eyes on the Defendant. He stated that the Defendant turned around and appeared to be "working the action of the gun," referring to the slide portion of the semi-automatic pistol. Seizing the opportunity, Officer Pack grabbed the Defendant from behind and wrestled him to the ground. The Defendant dropped the pistol. After the officers subdued and handcuffed the Defendant, Officer Pack retrieved the pistol which the Defendant had dropped. Officer Pack later took the pistol to the trunk of his patrol car where he removed the magazine and ejected a round of ammunition from the chamber. The Defendant was arrested and charged with aggravated assault, fleeing, and being a felon in possession of a firearm.

The Defendant was also charged by the federal government with being a felon in possession of a firearm. He was tried and convicted by a jury in federal court, and a transcript of that trial was entered into evidence during the hearing of the speedy trial motion. The transcript of the federal trial is the source of Officer Pack's testimony that is summarized above.

The Defendant was placed into custody in the Knox County jail. His initial state court appearance was scheduled for October 1, 1996, at which time lawyer Laurie Andrijeski was appointed to represent him on the state charges. Because the Defendant was being held on federal charges and the appropriate paperwork had not been completed, the Defendant did not appear for his October 1, 1996 court date. Ms. Andrijeski testified that while awaiting his federal trial, the Defendant's state case was reset for November 7, 1996; December 4, 1996; and January 9, 1997.

On January 8, 1997, the Defendant was convicted in federal court of being a felon in possession of a firearm. He was subsequently sentenced to three hundred months in prison and five years of supervised probation. Attorney Andrijeski testified that she had reached a "gentleman's agreement" with one of the attorneys in the District Attorney's office that, upon the Defendant's conviction in federal court, the state charges against him would be dropped. Accordingly, she considered her obligations on the case to have been completed in January and she took no further action on the Defendant's behalf with respect to the state charges. Attorney Andrijeski testified that, "after the [federal] conviction came down . . . my understanding was that the [state] charges had been dismissed." She further testified that, had she known the State was going to pursue the charges, she would have demanded a preliminary hearing, and "reopened negotiations to at least try and get concurrent sentences."

On June 9, 1997, the State obtained a presentment against the Defendant regarding the charges for which he was arrested the previous September. A capias was issued on June 16, 1997, but was not served. On October 23, 1997, the Defendant was transferred from Knox County jail to federal prison in Atlanta, Georgia. On December 30, 1998, while in federal custody, the Defendant received a classification sheet indicating that there was no state court detainer on him at that time. On October 5, 1999, the Knox County Sheriff's Department was notified by the Federal Bureau of Prisons that the Defendant's federal presentence investigation report indicated outstanding state charges. This notification triggered the Sheriff's Department to issue a detainer on the Defendant on November 23, 1999. On December 6, 1999, the Defendant responded to the detainer by asserting

his right to a speedy trial on the state charges.  On March 24, 2000, the Defendant was transported to Tennessee from federal prison and arraigned on the state charges on April 12, 2000.  His trial was set for July 19, 2000.  On July 18, 2000, the day before the case was set for trial, the trial court granted the Defendant's motion to dismiss the presentment ruling that the Defendant's right to a speedy trial had been violated.

## ANALYSIS

A criminal defendant is guaranteed the right to a speedy trial by our federal and state constitutions and by state statute.  See U.S. Const. amend. VI; Tenn. Const. art. 1, § 9; Tenn. Code Ann. § 40-14-101.  The right to a speedy trial protects the accused from oppressive pretrial incarceration, anxiety and concern arising from unresolved criminal charges, and the possibility that the accused's defense will be impaired by fading memories and the loss of exculpatory evidence.  See Doggett v. United States, 505 U.S. 647, 654 (1992); State v. Simmons, 54 S.W.3d 755, 758 (Tenn. 2001).  "The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial."  State v. Vickers, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997).  In determining whether the defendant's right to a speedy trial has been compromised, four factors must be weighed:  the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and any prejudice to the defendant caused by the delay.  See Barker v. Wingo, 407 U.S. 514, 530 (1972); State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973).  "The single most important factor is whether the defendant was prejudiced by the delay, and the most important issue concerning prejudice to the defendant is the impairment of the ability to prepare a defense."  State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994).  To trigger the Barker analysis, the interval between accusation and trial must be "presumptively prejudicial."  Doggett, 505 U.S. at 651-52.  A delay of at least one year crosses this threshold.  Id.; Vickers, 985 S.W.2d at 5.

The trial court granted the Defendant's motion to dismiss his case on the basis that his constitutional right to a speedy trial had been violated.  The trial court found that the delay between the Defendant's arrest and his trial was "significant"; that the delay was caused by the State's "negligence"; that the Defendant timely asserted his right to a speedy trial after receiving notice of the detainer; and that the Defendant was prejudiced by the delay.  In determining that the Defendant had been prejudiced the trial court found that

> had [the Defendant] been timely charged in the state court . . . he would have been in a position to negotiate at that point in time to resolve all of his cases in a manner that would have given him an opportunity to run his sentences concurrently.

The trial court found that this opportunity was "now lost to him."  The trial court also found  that the Defendant was now unable to locate a witness who might have been helpful, and that the lengthy delay "has an impact on a lawyer's ability to . . . properly prepare a case for trial."  The State now contends that the trial court's finding that the Defendant was prejudiced by the delay is erroneous and that this Court should reverse the trial court's ruling and remand this case for trial.

We use the abuse of discretion standard of review in determining whether the trial court correctly applied the four-part balancing test to the Defendant's claim that his right to a speedy trial was violated. See State v. Jefferson, 938 S.W.2d 1, 14 (Tenn. Crim. App. 1996); State v. Joseph Hart, No. 02C01-9902-CC-00075, 1999 WL 737780, at * 4 (Tenn. Crim. App., Jackson, Sept. 20, 1999); State v. Jeffery Jermaine Hankins, No. 02C01-9806-CC-00170, 1999 WL 569576, at * 11 (Tenn. Crim. App., Jackson, Aug. 4, 1999); State v. Roy Dale Wakefield, No. 01C01-9609-CR-00389, 1998 WL 19863, at * 2 (Tenn. Crim. App., Nashville, Jan. 21, 1998).[1] This standard of review "contemplates that before reversal the record must show that a judge 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Coley, 32 S.W.3d 831, 833 (Tenn. 2000) (quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)). Alternatively, "[a]n abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable." State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 191 (Tenn. 2000).

The Defendant's trial was set for July 19, 2000. The length of time between the Defendant's arrest and his trial was therefore three years and ten months. While this is a substantial delay, it does not, in and of itself, establish a constitutional violation. See, e.g., Vickers, 985 S.W.2d at 7 (affirming the trial court's denial of the defendant's motion to dismiss for lack of a speedy trial where delay was three years and nine months). The reasons for the delay must therefore be considered. The possible reasons for the delay of a defendant's trial fall into four categories:

      (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant;

      (2) bureaucratic indifference or negligence;

      (3) delay necessary to the fair and effective prosecution of the case; and

      (4) delay caused, or acquiesced in, by the defense.

Id. at 5-6. In this case, the trial court found that the reason for the delay was the State's negligence, and the record supports this finding. Prosecutorial negligence is a "more neutral" reason than deliberate delay to hamper the defense and should therefore be weighed less heavily against the State, "but nevertheless should be considered." Barker, 407 U.S. at 531. And, the longer the delay caused by the State's negligence, the more heavily this factor is weighed against the State. See Simmons, 54 S.W.3d at 760. The record also supports the trial court's finding that the Defendant asserted his right to a speedy trial within two weeks of receiving notice of the detainer filed against him. The trial court gave this factor little weight. In reviewing the trial court's findings on the first three Barker factors, then, we find no abuse of discretion.

We turn now to the pivotal inquiry: did the trial court abuse its discretion in concluding that the Defendant had been prejudiced by the almost four-year delay in bringing him to trial?

---

[1] We also note that the standard of review for a trial court's decision to dismiss an indictment - which is the remedy for a successful claim of a speedy trial violation - is abuse of discretion. See State v. Harris, 33 S.W.3d 767, 769 (Tenn. 2000).

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532 (footnote omitted). We acknowledge that the Defendant in this case remained incarcerated because of his federal conviction. However, as the Supreme Court has recognized, "a man already in prison under a lawful sentence . . . [subjected to a] delay in bringing [him] to trial on a pending charge may ultimately [suffer] as much oppression as is suffered by one who is jailed without bail upon an untried charge." Smith v. Hooey, 393 U.S. 374, 378 (1969). The Court recognized two reasons that an incarcerated accused might suffer oppression from a delay in being tried on pending charges: the possible loss of an opportunity to obtain a sentence that would run at least partially concurrent with the one being served, and the possible worsening of the conditions under which the existing sentence is being served. Id. The Hooey court also recognized that, "while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." Id. at 379.

With respect to the first of these three forms of prejudice, the trial court found that the Defendant had lost an opportunity to negotiate a plea bargain resolving both his state and federal charges at one time. Specifically, the trial court determined that the Defendant had lost an opportunity to run his state sentences concurrently with his federal sentences. The record contains adequate support for this conclusion. According to defense counsel Andrijeski, she would have pursued plea bargain negotiations aimed at concurrent sentences had she realized the State intended to pursue its charges. Instead, she discontinued her representation of the Defendant on the state charges because she thought the charges had been dismissed. Thus, she did not attempt to obtain concurrent sentences for the Defendant on his state and federal charges.

We acknowledge, as the State points out in its brief, that the Defendant may still obtain concurrent sentencing of his state sentences with his federal sentence. Indeed, the trial court acknowledged that that option remained available. Our Rules of Criminal Procedure provide that, "[i]f the defendant has additional sentences or portions thereof to serve, as the result of conviction in other states or in federal court, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders." Tenn. R. Crim. P. 32(c)(2) (emphasis added). Thus, if the Defendant were to be convicted of the state charges, the trial court would retain the discretion to order his sentences on those convictions to run concurrently with his thirty-year federal sentence. In that event, the Defendant would spend no more time in prison than he would have had he been

tried within a year of his arrest.[2] We also acknowledge that our supreme court has recently held that "the lost possibility of concurrent sentencing is [not] enough in and of itself to require dismissal on speedy trial grounds." Simmons, 54 S.W.3d at 761. Nevertheless, we cannot assume that any opportunity the Defendant now has for concurrent sentences is equivalent to the opportunity he may have had in 1996-97. Therefore, given the remaining factors present in this case, we cannot find that the trial court abused its discretion in finding that the Defendant suffered some prejudice in the lost opportunity to plea bargain his state charges.

With respect to the second form of prejudice, the trial court correctly found that the Defendant suffered no worsening of the conditions of his imprisonment as a result of the unresolved state charges, or that he suffered anxiety and concern concerning the state charges. Indeed, the Defendant contends that he did not even know that the state charges were still pending against him until late 1999. Thus, in his mind, he had nothing to be anxious about.

The third type of prejudice which an accused may incur by a delay in being brought to trial -- that the accused's defense will be impaired -- is "the most serious." Barker, 407 U.S. at 532. With regard to this concern the trial court found prejudice because a potential witness disappeared in July 1997 and because the lengthy delay "has an impact on a lawyer's ability to . . . properly prepare a case for trial." The trial court noted that the Defendant's lawyers had the transcript of the federal trial to assist in their preparations, but found that the transcript did not cure "all the . . . potential prejudice in this case."

The State contends that the trial court erred in finding a speedy trial violation "because the defendant has shown no prejudice whatsoever in the delay." We must point out, however, that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655 (emphasis added). Moreover, "the presumption that delay has prejudiced the accused intensifies over time." Simmons, 54 S.W.3d at 759. Thus, "our toleration of [delay caused by the State's] negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial." Doggett, 505 U.S. at 657 (citation omitted).

The trial court's determination that the Defendant's defense was prejudiced from the almost four-year delay was based in part on the Defendant's present inability to locate a potential witness. The alleged witness was, apparently, one of the occupants of the apartment through which the Defendant ran as he tried to elude the police. The record establishes that the Defendant became unable to contact this person after July 1997. The trial court was also concerned that the extensive delay impaired defense counsel's ability to properly prepare the Defendant's case for trial.

---

[2]The record indicates that the Defendant would be sentenced as a Range II offender. Thus, the maximum sentences faced by the Defendant on his state charges total fourteen years, eleven months, twenty-nine days, even if they are run consecutively to each other. See Tenn. Code Ann. §§ 39-13-102(d); 39-16-603(a)(3); 39-17-1307(b)(2); 40-35-111(e)(1); 40-35-112(b)(3), (b)(5).

We acknowledge that the Defendant has not demonstrated any <u>particularized</u> trial prejudice resulting from the delay. Our supreme court has recognized, however, that a defendant is not necessarily required to affirmatively prove particularized prejudice. <u>See</u> <u>Simmons</u>, 54 S.W.3d at 760. On the contrary, we find that the State has failed to persuasively rebut the presumption of prejudice arising from the lengthy delay. <u>See</u> <u>Doggett</u>, 505 U.S. at 658. Thus, given the almost four year delay in this case, and given the presumption of prejudice attendant upon that delay, we simply cannot say that the trial court abused its discretion in concluding that the Defendant's right to a speedy trial was violated. That is, the trial court's determinations are sufficiently supported by the record as to avoid being "arbitrary, illogical, or unconscionable." Accordingly, we affirm the judgment of the trial court.


_____
ROBERT W. WEDEMEYER, JUDGE